Osahon Omoregie
42 Otsego Ave.
New Rochelle, NY 10804
(917) 805-8309
(413) 803-5514 (FAX)
oomoregie@gmail.com

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OSAHON OMOREGIE, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-cv-03884 PJH |
| ) | |
| vs. ) | November 7, 2007, 9:30 A.M. |
| ) | |
| BOARDWALK AUTO CENTER, INC. and ) | MOTION FOR SANCTIONS |
| VW CREDIT LEASING, LTD. and ) | |
| VW CREDIT, INC., ) | |
| ) | |
| Defendants. ) | |

**Notice of Motion.** Please take notice that Osahon Omoregie ("Omoregie") will make this motion for hearing before this Court on November 7, 2007, at 9:30 a.m., or as soon thereafter as the matter can be heard, in Courtroom No. 3, 17th Floor of the United States Courthouse located at 450 Golden Gate Ave., San Francisco, CA 94102.

**Statement of Purpose.** Plaintiff, Omoregie, moves the Court for (a) an order pursuant to the Court's inherent power to imposing appropriate sanctions, for sanctions in the amount of $6000 each, against Brian Frontino ("Frontino"), an attorney representing Defendants VW Credit

Leasing, Ltd., ("VWL") and VW Credit, Inc. ("VWC"), and on his law firm, Stroock & Stroock & Lavan LLP ("Stroock"), for making a submission for the purpose of perpetrating a fraud upon this Court, and (b) an order enjoining VWL and VWC from contesting any defaults entered against them.

**Memorandum of Points and Authorities.**

**TABLE OF CONTENTS**

I. ISSUES PRESENTED ........................................................................................................ 4
II. STATEMENT OF FACTS ................................................................................................. 4
   1.   Service of Defendant ................................................................................................ 4
   2.   Frontino's Opposition .............................................................................................. 5
III. ARGUMENTS ................................................................................................................... 6
   1.   The Courts May Sanction Attorneys for Perpetrating a Fraud upon the Court ........ 6
   2.   Frontino's Opposition Was a Perpetration of a Fraud upon this Court ..................... 7
     A.  Frontino Hid Material Facts in Dispute from the Court ....................................... 7
     B.  Waiver of Service Form ........................................................................................ 8
     C.  Frontino Misstated the Law .................................................................................. 9
     D.  Frontino Inappropriately Mischaracterized the Pro Se Plaintiff .......................... 10
     E.  Frontino Knowingly Submitted a Procedurally Improper Opposition ................ 11
   3.   Appropriate Sanctions under the Courts Inherent Power ....................................... 12
     A.  Relation to Rule 11 .............................................................................................. 12
     B.  Appropriate Sanction ........................................................................................... 12

**TABLE OF CONTENTS**

**Cases**

Aoude v. Mobile Oil Corp., 892 F.2d 1115 (1st Cir. 1989) ..................................................... 7
Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210 (9th Cir. 2003) ........................... 6
England v. Doyle, 281 F.2d 304 (9th Cir. 1960) ..................................................................... 7
Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) ...................................................................... 6, 7

1   International Union, UMW v. Bagwell, 512 US 821 (1994).......................................................... 6
2   Knupfer v. Lindblade, 322 F.3d 1178 (9th Cir. 2003)................................................................ 6
3   Oklahoma Radio Assocs. v. FDIC, 969 F.2d 940 (10th Cir. 1992)............................................ 10
4   Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365 (Fed. Cir. 2002) ........................................... 13
5   United States v. Brow, 2006 U.S. Dist. LEXIS 64361 (E.D.N.Y. 2006) ..................................... 11
6   United States v. Landsberger, 1995 U.S. Dist. LEXIS 15274 (D. Ariz. 1995) ............................ 11

**Other Authorities**

1-4 Sanc. Fed. Law of Lit. Abuse ................................................................................................ 13

4-27 MB Prac. Guide: Fed Pretrial Civ. P. in CA........................................................................ 11

## I. ISSUES PRESENTED

Under the Court's inherent power, the Court possesses the power to curb bad-faith litigation practices through the imposition of sanctions. When a court finds by clear and convincing evidence that a party's action were undertaken for an improper purpose, the court may then impose sanctions on that offending party. By clear and convincing, Frontino's actions can be shown to have been undertaken for an improper purpose, i.e., to perpetrate a fraud upon this Court. Frontino's Opposition contained factual and legal misrepresentations that showed a conscious desire to improperly interfere with the proper function of the Court. As such sanctions against Frontino and Stroock, and the enjoinment of VWL and VWC's from contesting any future defaults, the action that Frontino improperly interfered with, are warranted in order to deter repetition of this conduct by others similarly situated in the future.

## II. STATEMENT OF FACTS

**1.    Service of Defendant.**

On July 30, 2007, the above action was filed. (Omoregie Decl. ¶ 3.) The following day, packages containing waiver of service forms were sent to the registered agent of service for VWL and VWC, along with the summons, the complaint, and supplemental documents. Id., ¶ 4. Additional supplemental documents were sent to VWL and VWC on August 6, 2007. Id., ¶ 7.

On August 2, 2007, VWC's registered agent of service accepted delivery of the waiver of service form. Id., ¶ 5. The delivery was addressed to CT Corporation System ("CT Corp.") as the registered agent of service for "Volkswagen Credit, Inc." Id. On August 13, 2007, Omoregie received a letter dated August 3, 2007, in which CT Corp. stated that they were unable to deliver the waiver of service form to VWC as "Volkswagen Credit, Inc. [was] not listed on

[their] records."[1]  Id., ¶ 8.  The following day, Omoregie had both VWC and VWI personally served with process.  Id., ¶ 9.

The proofs of service for both defendants were filed with the Court on August 20, 2007.  Id., ¶ 10.  The due dates of the answers for each defendant were listed on the court docket as September 4, 2007.  Id.

On August 14, 2007, Omoregie served the FAC on both defendants by first-class mail pursuant to Rules 5(a) and 5(b)(2)(B).  Id., ¶ 11.  The FAC was received by VWL on August 16, 2007 and by VWC on August 17, 2007.  Id., ¶ 12.  The FAC was filed with the Court on August 20, 2007.  Id., ¶ 10.

On August 17, 2007, Frontino returned one waiver of service form for both VWL and VWC ("Waiver").  Id., ¶ 14.  Though Frontino notified Omoregie of the Waiver on August 17, 2007, as Omoregie was out of the country at the time, Omoregie did not become aware of the Waiver until August 23, 2007.  Id., ¶ 15.

2.      **Frontino's Opposition.**

One September 5, 2007, Omoregie filed a request directed to the Clerk requesting that the Clerk enter defaults against both VWL and VWC for their failure to respond to the FAC ("Request").  Id., ¶ 16.  Omoregie then informed Frontino that he had sought an entry of default against his clients.  Id., ¶ 22.  In the email correspondence that ensued, Omoregie informed Frontino on three separate occasions that his clients had been physically served with process.  Id., ¶ 19. Additionally, Omoregie directed Frontino to the entry that had been on the court docket for two weeks showing that VWL and VWC had a responsive pleading due on September

---

[1] A reasonable investigation of the documents sent to CT Corp. would have revealed that the summons and complaint were directed towards VWC.  That such an investigation was not conduct is not the focus of this motion, however, it should be noted.

4, 2007. Id., ¶ 19. Frontino was informed that this entry corresponded to the returned proof of service relating to the physical service of his clients on August 14, 2007.[2] Id., ¶ 24.

In the above correspondence, Frontino indicated his intention to file an opposition to the request. Id., ¶ 21. Omoregie informed him that he was not entitled to submit such an opposition as only a request to the Clerk, not a motion to the Court, had been made. Id., ¶ 21. Frontino was further informed that the submission of any document without an adequate investigation on his part could lead to his being sanctioned by the Court. The next day, Frontino filed an opposition directed at the Request ("Opposition"). Id., ¶ 21.

On September 12, 2007, the Clerk declined to enter defaults against either of the defendants. Id., ¶ 18. The Opposition was considered as an objection to the Request and was apparently used in the determination to decline the Request. Id. The Request was declined as premature. Id.

## III. ARGUMENTS

**1.    The Courts May Sanction Attorneys for Perpetrating a Fraud upon the Court.**

District courts possess the inherent power to curb bad-faith litigation practices through the imposition of sanctions. Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1220 (9th Cir. 2003). Such bad-faith or willful misconduct must be egregious and consist of something more than mere negligence or recklessness. Knupfer v. Lindblade, 322 F.3d 1178, 1197 (9th Cir. 2003); Fink v. Gomez, 239 F.3d 989, 993-994 (9th Cir. 2001). Sanctions may be imposed if it is shown by clear and convincing evidence that a party acted for an improper purpose. See Fink, 239 F.3d at 992. The perpetration of a fraud upon the court has been found

---

[2] After Frontino submitted his opposition, Omoregie again notified Frontino by email that his clients had been physically served and requested that he withdraw his submission. Id., ¶ 20.

to be such an improper purpose. Aoude v. Mobile Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). A fraud upon the court has been defined as an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960).

### 2. Frontino's Opposition Was a Perpetration of a Fraud upon this Court.

An examination of the Opposition shows, by clear and convincing evidence, that Frontino attempted to perpetrate a fraud upon this Court. Frontino hid material facts from the Court, misstated well accepted law, knowingly submitted an improper objection, and mischaracterized Omoregie, all in a shortsighted attempt to improperly influence the Clerk.

#### A. Frontino Hid Material Facts in Dispute from the Court.

As indicated above, Frontino was informed by Omoregie on three separate occasions that his clients were physically served with process and was also directed to the entry on the court docket that reflected that fact. However, in the Opposition, Frontino made no mention of this fact. He neither admitted nor denied it. The closest he came was to point to the Request and to claim that in it, Omoregie "purports to have served [VWL and VWC] with process via U.S. Mail pursuant to Rule 5."[3] (Frontino Opp'n 3.) Frontino's later quotation of Rule 4(d)(3) in the Opposition, Id., indicates that he was aware of the significance of whether or not his clients were physically served with process, i.e., that an additional 40 days to respond is only given to a defendant if the waiver is returned before they are served with process. That Frontino neither

---

[3] It should be noted that nowhere in the Request or the Certificate of Service for the FAC does Omoregie claim that service of process was served via U.S. Mail. In fact, Omoregie informed Frontino on September 5, 2007, that the proofs of service indicating that process had been served physically were on file with the Court. (Omoregie Decl. ¶ 19.)

directly admitted nor denied whether his clients were physically served with process shows that at best, he was uncertain of whether they were and did not want to take a position that could be later challenged, or at worst, he knew they were and did not want to directly perjur himself. Either way, Frontino is guilty of hiding the fact that a controversy existed over a material fact that was central to his position in the Opposition. Hiding a material fact of this nature is clearly a perpetration of a fraud on this Court.

### B. <u>Waiver of Service Form</u>.

Additionally, Frontino attempted to hide the fact that though he returned the Waiver for both of his clients, only one of them actually received a waiver form from Omoregie.[4] Frontino did this by combining the identities of his two clients early in the Opposition. In this manner, Frontino was able to argue for a 40-day extension for both of his clients where only one of them was even remotely eligible.[5]

Frontino also at different points in the Opposition oscillated between claiming that the waiver form was sent to his clients on August 6, 2007 and August 8, 2007. However, the forms were actually sent to his clients on July 31, 2007 (a fact further proven by CT Corp.'s letter dated August 3, 2006, returning the waiver, (Omoregie Decl. Ex. B)). It is possible that Frontino was simply mistaken about the date on which the waivers were sent. However, it should not escape the Court's attention that Frontino's claim that they were sent a week later than they actually were, had the effect of making Omoregie look less diligent in the prosecution of this action and VWL and VWC more so in their defense.

---

[4] The other form was returned to Omoregie by CT Corp.
[5] Though, it should again be noted that the one client of Frontino's that was remotely eligible, VWL, was actually not eligible for an additional 40 days to respond since they had been physically served process before Frontino returned the Waiver.

The actual Waiver is worth noting. In addition to containing the wrong date that the request was sent and listing two defendants when only one defendant received a waiver form, the Waiver was also conspicuously undated. This may have been an attempt on Frontino's part to obfuscate the execution date of the Waiver. In fact, when Omoregie received the Waiver, he believed that Frontino had returned it solely in an attempt to make it appear as though VWL and VWC had fulfilled their obligations under Rule 4(d) and thus escape liability for the costs of service under that same rule.[6] The fact that VWL was in possession of the Waiver for over two weeks and returned it immediately after they were physically served process further strengthened this belief.

Frontino's entire conduct in regards to the Waiver amounts to a further attempt to perpetrate a fraud upon this Court. As he is the one who signed the Waiver, it is clear that he must have known that only one form was received and yet he made no mention of this, another material fact, in his Opposition. Additionally, he may have attempted to obfuscate the date of execution of the Waiver and also incorrectly claimed that the waiver was sent a week later than it actually was.

### C. **Frontino Misstated the Law.**

Frontino also asserts in the Opposition that service under Rule 5 is only valid after the party being served has made a formal appearance. (Frontino Opp'n 3.) That is a patently untrue statement of law that is not supported by case law, statute, or either of the two cases that Frontino cites. See 4-27 MB Prac. Guide: Fed Pretrial Civ. P. in CA § 5.17[2]; Oklahoma Radio Assocs. v. FDIC, 969 F.2d 940, 943 (10th Cir. 1992). While it is true that Rule 5 requires a court to have

---

[6] Since Omoregie was at that time not interested in seeking an immediate recoupment of the cost of service, he declined to contact Stroock about the Waiver.

jurisdiction over a party served pursuant to it; this does not necessarily mean Rule 5 requires that the party served have made a formal appearance. Personal service of process can also give a court personal jurisdiction over a defendant, which would then allow service under Rule 5. See Oklahoma Radio Assocs., 969 F.2d at 943 ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served.").

This clear misstatement of the law by Frontino may also show an awareness that his clients had actually been physically served. By claiming that Rule 5 service is only applicable after a party has made an appearance, it is possible that Frontino was setting up an alternative argument to make if it was shown that his clients were in fact physically served under Rule 4. In this manner, Frontino would be able to argue, on behalf of his clients, that regardless of physical service of process, service of a FAC by U.S. mail is inadequate grounds for establishing a default without a prior appearance of the defaulting party.

Regardless of whether Frontino's misstatement of law was the result of a hastily drafted opposition or an attempt to consciously mislead the Court, it still can be seen, in light of his other actions, as part of a larger attempt to perpetrate a fraud on this Court.

### D. **Frontino Inappropriately Mischaracterized the Pro Se Plaintiff.**

In an attempt to insinuate that Omoregie is inexperienced with federal practice and hint at his being at fault, Frontino describe Omoregie as a law student. However, Omoregie is actually an associate at a major law firm in New York. Whether or not this mischaracterization was another accident on Frontino's part, it is clearly inappropriate for a member of this Court to attempt to use the pro se status of his opponent against him. Pro se litigants are often held to the

same standard as representative counsel and should thus be afforded the same level of respect from the Court and opposing counsel.  To describe one's opponent as a law student and then in the next breath claim that his action are procedurally improper is a clear example of attempting to manipulate the decisions of the Court through improper means.  Though Frontino's characterization of Omoregie as a law student was inaccurate and to the extent that Frontino was aware that it was inaccurate, he was perpetrating another fraud on this Court; it would have still been an inappropriate characterization even if it was accurate, and when taking with his other actions, further added to the perpetration of fraud upon this Court.

### E. **Frontino Knowingly Submitted a Procedurally Improper Opposition**.

As mentioned above, Frontino was notified by Omoregie on September 5, 2007, that he was not entitled to oppose the Request.  From a reading of Rule 55(a), it is clear that Rule 55(a) does not envision the Clerk using his discretion to rule over conflicting factual or legal assertions.  The Rule is straightforward in laying out the procedure for obtaining an entry of default.  United States v. Brow, 2006 U.S. Dist. LEXIS 64361 at *6 -7 (E.D.N.Y. 2006); 4-27 MB Prac. Guide: Fed Pretrial Civ. P. in CA § 27.03.  Additionally, the case law supports the obvious conclusion that the Clerk's role is purely a ministerial one, not an adjudicatory one.  Brow, 2006 U.S. Dist. LEXIS 64361, at *3; United States v. Landsberger, 1995 U.S. Dist. LEXIS 15274, at * 14-5 (D. Ariz. 1995).  By filing his opposition, Frontino forced the Clerk to adjudicate over a matter in which he had no authority to use his discretion.  If we are again to give Frontino the benefit of the doubt and say that he was not aware of the mechanisms of Rule 55(a), Omoregie's informing him of his entitlements under that Rule still created an affirmative duty on his part to investigate the law surrounding his submission.  Fed. R. Civ. P. 11(b)(1).

That Frontino did not do this, or if he did, chose to ignore what he discovered, is a clear violation of Rule 11(b)(1).  Such an improper submission when taking with his other actions further added to his perpetration of fraud upon this Court.

### 3. Appropriate Sanctions under the Courts Inherent Power.

#### A. Relation to Rule 11.

Much of the substance of the Opposition clearly violates Rule 11(b).  Whether or not Frontino knew that his clients were physically served, that only one client actually received the Waiver, the correct date that the Waiver was sent, whether or not Omoregie was a law student, and the correct law surrounding service by Rule 5, these were all facts readably obtainable by Frontino before he submitted the Opposition.  Any reasonable investigation would have revealed the truth concerning these facts.  However, by Frontino's own admission, he spent only four hours investigating the facts, the law, and writing the Opposition.  (Frontino Decl. ¶ 7).  That his investigation was inadequate under Rule 11(b) is clear from its results.  However, this motion has not been brought under Rule 11 since the objective of the Opposition, i.e., preventing an entry of default by the Clerk, has already been achieved.  Thus a motion under Rule 11 would be futile since Frontino could easily escape a Rule 11 motion by simply withdrawing the Opposition as allowed under Rule 11(c)(1)(A).  Instead this motion has been brought under the Court's inherent power to curb bad-faith litigation practices.  However, it should be noted that under Rule 11(c)(2)(B), the Court may, on its own initiative, order Frontino and Stroock to show cause why they have not violated Rule 11(b).

#### B. Appropriate Sanction.

The factual and legal misrepresentations, coupled with Frontino's disregard of the Rules of Federal Procedure, evinced by his submission of an inappropriate opposition, show that Frontino at best made a reckless investigation before submitting the Opposition. If we are to give him the benefit of the doubt and assume that he was not aware that his clients were physically served,[7] he was clearly made aware of that fact by Omoregie, the day before he submitted his Opposition. Knowing that this issue was in dispute, Frontino's conscious decision to omit it from his Opposition shows, by clear and convincing evidence, that he desired to perpetrate a fraud upon this Court. When taken with his actions in regards to the Waiver, his misrepresentation of the law, his mischaracterization of Omoregie, and his submission of an opposition, which he was put on notice was improper, his actions cannot be seen to be anything other than a perpetration of a fraud upon this Court. It would thus be appropriate to sanction both Frontino and his firm, Stroock, each in the amount of $6000, and enjoin their clients, VWL and VWC, from contesting any future defaults against them.[8]

Though, under Rule 11, a pro se litigant who is also an attorney may not be awarded attorneys' fees calculated as though the litigant were represented by counsel, court have found that under their inherent power such awards may be made. Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1377-1378 (Fed. Cir. 2002); 1-4 Sanc. Fed. Law of Lit. Abuse Supp. to § 28.

Omoregie has spent well over forty hours attempting to resolve the issues created by the Opposition. This time has been spent researching the law, checking the facts raised in connection with the Request and the Opposition, and producing briefs. As Omoregie is an

---

[7] Though given the fact that two separate clients were served, it is hard to believe that Frontino or someone else at Stroock was not aware of this.

[8] To the extent that Frontino's actions can be attributable to his clients not keeping him updated as to the events of this action, they properly share responsibility for his conduct.

attorney, it would thus be fitting for the court to award Omoregie the sanctions imposed against Frontino and Stroock.

Though the sanctions proposed are rather severe, it should again be noted that VWL and VWC are proceeding against a pro se plaintiff. One would assume that if Frontino was proceeding against a party represented by counsel, he would have used more caution before he submitted the Opposition. A point further illustrated by Frontino's request for sanctions. (Frontino Opp'n 4.) It is extremely unlikely that any member of this Court would take seriously a request for sanctions directed at the Clerk (especially one in violation of Civ L.R. 7-8). However, such a request would have had the effect of frightening most pro se litigants, which would normally have resulted in Frontino's conduct going unopposed. Thus, in order to deter repetition of this type of conduct by representative counsel that faces pro se litigant in the future, higher than normal sanctions are warranted.

Respectfully submitted,

By: s// Osahon Omoregie

Pro Se