Osahon Omoregie
42 Otsego Ave.
New Rochelle, NY 10804
(917) 805-8309
(413) 803-5514 (FAX)
oomoregie@gmail.com

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OSAHON OMOREGIE, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-cv-03884 PJH |
| ) | |
| vs. ) | NOVEMBER 7, 2007, 9:00 A.M. |
| ) | |
| BOARDWALK AUTO CENTER, INC. and ) | PLAINTIFF'S REPLY TO |
| VW CREDIT LEASING, LTD. and ) | DEFENDANT BOARDWALK'S |
| VW CREDIT, INC., ) | OPPOSITION TO MOTION |
| ) | FOR ENTRY OF DEFAULT, |
| Defendants. ) | MOTION FOR RULE 11 |
| ) | SANCTIONS, AND MOTION TO STRIKE |

**Table of Contents**

I. INTRODUCTION ................................................................................................................ 1

II. DISCUSSION OF FACTUAL ISSUES RAISED IN OPPOSITIONS ................................... 1

   1.   Facts in Dispute........................................................................................................... 1

     A.  Boardwalk's Claim That Omoregie Misrepresented Facts. ............................... 1

     B.  Boardwalk's Claim That Omoregie Attempted to Mislead Coelho. ................... 2

     C.  Order of Events on September 5, 2007. ............................................................. 5

     D.  Boardwalk's Claim That Omoregie Refused to Send the FAC. ......................... 6

   2.   Facts That Require Further Comment......................................................................... 6

     A.   Action Was Brought Two Years into Lease.......................................................... 6

     B.   FAC Was Filed on August 20, 2007. .................................................................. 7

     C.   Boardwalk's Counsel Received the FAC............................................................ 7

     D.   Omoregie's Declination of Boardwalk's Requests. ........................................... 8

III. DISCUSSION OF DEFENDANTS' ARGUMENTS .............................................................. 9

   1.   Motion for Entry of Default......................................................................................... 9

     A.  Boardwalk's First Answer Was Not a Formal Appearance................................ 9

     B.  Significance of a Formal Appearance. ............................................................. 10

     C.  Clerk's Role as Purely Ministerial. ................................................................... 11

     D.  Denial of Motion to Set Aside. .......................................................................... 11

     E.  Omoregie Was Required to Notify Boardwalk Before the Request for an Entry of Default. ................................................................................................................................. 13

   2.   Motion for Rule 11 Sanctions and Motion Rule to Strike. ............................................ 14

A.  Clapp and Boardwalk's Justification. ................................................................................ 14

B.  Rule 11 Safe Harbor. ......................................................................................................... 14

C.  Doctrine of Unclean Hands. .............................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Benny v. Pipes, 799 F.2d 489 (9th Cir. 1986) ........................................................................ 9, 10

Chiang v. Veneman, 385 F.3d 256 (3d Cir. 2004).................................................................... 12

Coleman v GMAC, 196 F.R.D. 315 (M.D. Tenn. 2000) .......................................................... 13

Falk v. Allen, 739 F.2d 461 (9th Cir. 1984) ............................................................................. 12

Gaglio v. Silverman (In re Suprema Specialties, Inc.), 330 B.R. 40 (S.D.N.Y. 2005)................. 11

Hawaii Carpenters' Trust Funds v. Stone, 794 F2d 508 (9th Cir. 1986) ..................................... 14

Livermore Corp. v. Aktiengesellshaft Gebruder Loepfe, 432 F.2d 689 (D.C.D.C 1970) .... 8, 9, 10

McManus v. American States Ins. Co., 201 F.R.D. 493 (C.D. Cal. 2000).................................. 11

Pena v. Seguros La Comercial, S.A., 770 F.2d 811 (9th Cir. 1985)......................................... 1, 12

TCI Group v. Knoebber, 244 F.3d 691 (9th Cir. 2000) ............................................................. 12

U.S. v. Brow, 2006, U.S. Dist. LEXIS 64361 (E.D.N.Y 2006) .................................................. 11

Washington Nation Insurance Co. v. Hendricks, 8 F.Supp. 1542 (W.D. WI 1994).................... 10

Wilson v. Moore, 563 F.2d 366 (9th Cir. 1977) ..................................................................... 9, 10

**Other Authorities**

4-27 MB Prac. Guide: Fed. Pretrial Civ. P. in CA............................................................. 11, 13

# I. INTRODUCTION

The central theme of all three defendants' oppositions is that they are without culpability for their default. This is not true. In the Ninth Circuit, the test for culpability for a default is based on whether the defendant had actual or constructive knowledge of their requirements to respond. Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 815 (9th Cir. 1985). From August 20, 2007, the court docket reflected the due dates for each defendant's answer. From that date, the docket also reflected that a FAC had been filed. Thus, at the very least, all defendants had constructive knowledge that answers to the FAC were necessary and the dates they were due.[1] Though the issue was raised in the moving papers, none of the defendants has attempted to explain why they were not able to properly monitor the court docket. Given the high stakes involved in this action, their failure to properly plead in accordance with the Federal Rules of Civil Procedure can be seen to be the result of their own culpable conduct

# II. DISCUSSION OF FACTUAL ISSUES RAISED IN OPPOSITIONS

**1.   Facts in Dispute.**

**A.   Boardwalk's Claim That Omoregie Misrepresented Facts.**

Boardwalk claims that Omoregie "misrepresented facts in his moving paper." (Boardwalk Opp'n Mot. Entry of Default FN 1.) Boardwalk points to Omoregie's description of Jeff Seiffe's ("Seiffe") refusal of the delivery containing the waiver of service form on August 2, 2007 as proof of this allegation. It is important to note that Boardwalk does not deny that Seiffe refused the delivery. They merely point to the United States Postal Service records provided by

---

[1] General Order No. 45 (IV) required counsel for all defendants to register "upon notification that the action [was] subject to ECF." All defendants were notified of this with service of process. If they had registered they would have received notification of every filing. Additionally, General Order No. 45 (IX)(A), "strongly encourages [parties] to check the docket in their case on the electronic filing system regularly.

Omoregie and insist that those documents do not support Omoregie's statements. Admittedly, the documents are a bit confusing since they state that the delivery was refused at 10:57 am on August 2, 2007, then state that the delivery was accepted at 10:58 am on August 2, 2007.[2] (Omoregie Decl. ¶ 17.) However, the fact remains that the delivery was accepted and signed for, and then returned to Omoregie with the words refused stamped on the front of it.[3] (Omoregie Decl. ¶ 18.) Boardwalk then states that they did not return an executed waiver of service form. This is of course true since Seiffe refused the delivery containing the form.

### B. **Boardwalk's Claim That Omoregie Attempted to Mislead Coelho.**

Boardwalk claims that Omoregie attempted to mislead Coelho "into believing that the operative pleading was the original complaint." (Boardwalk Opp'n Mot. Entry of Default 1.) The statements offered by Boardwalk in support of this allegation are taken out of context. Though the email correspondence in question has been included as Exhibit I in the declaration of Omoregie, they will be reproduced in their substantive entirety[4] below as they are of extreme importance in evaluating Boardwalk's allegations. On August 17, 2007, Coelho wrote:

> Our office has been retained to represent Boardwalk Auto Center in the above matter. We have just been provided with a copy of the Complaint filed by you. We do not have a copy of the proof of service. Please fax a copy of the proof of service to the fax number below. In the meantime, we request a 10 day extension of time to respond to your Complaint. If that is acceptable to you, please let us know by Monday, August 20, 2007.

To this Omoregie responded:

> I am sorry, but Boardwalk was served on the 8th, and prior to that their management had refused mail addressed to their registered agent of service advicing [sic] them of this suit; any delay in retaining you was due solely to their own deliberate negligence. On the 29th of August, I will ask the court clerk to

---
[2] This seems to have been a data entry error.
[3] Omoregie is still in possession of this post-marked and refusal stamped package, and will be able to produce it upon request from the Court. (Omoregie Decl. ¶ 18.)
[4] Greetings, signatures, and confidentiality notices have been excluded to save space.

> enter a default judgment against Boardwalk if they have not responded to my complaint.
>
> The proof of service against Boardwalk is currently being filed with the court. You may obtain a copy of it there.

Omoregie responded directly to Coelho's email. Coelho was told that he would not be giving an extension by Omoregie and was also given a justification for that denial. Coelho was explicitly warned that if Boardwalk did not timely respond, Omoregie would seek an entry of default against Boardwalk. Coelho was also told that if he desired a copy of the proof of service he should contact the court. Boardwalk took six words in the middle of a sentence to support their allegations of deception. The six words offered by Boardwalk, "Boardwalk was served on the 8th," were clearly meant to provide Coelho with an explanation of why his clients, who had refused a waiver of service form that would have given them forty additional days to respond and had waited nine days to retain legal representation, would not be given additional time to respond by Omoregie.

Boardwalk offers an additional email exchange between Omoregie and Coelho as further proof that Omoregie misled Coelho into believing that the original complaint was the operative pleading as part of Omoregie's ultimate scheme to take Boardwalk's default. Again even though these emails are included as Exhibits J to the declaration of Omoregie, they are extremely important in evaluating Boardwalk's allegations and are thus reproduced in their substantive entirety below. On August 22, 2007, Coelho wrote:

> Thank you for confirming the date of service. We were actually able to confirm the date with the Court. We were just provided with a letter from our client attaching a First Amended Complaint that it appears that you will be filing. Your cover letter mentions a motion for leave to file the Complaint. Do you intend to file such a motion?

To this Omoregie responded:

> Please check with the court to determine what has been filed.
>
> At this point, I think it might be best if you only contact me regarding issues which the court requires we discuss or possible settlements [sic] offers.

Coelho replied with:

> You served on my client a letter attaching a First Amended Complaint with additional counts and prayers for relief. The Court does not show that you have filed the Complaint. It is appropriate for our office to communicate with you regarding the pleadings that you have served on our client.

And finally, Omoregie replied:

> The court docket shows that both the first amended complaint and the motion to e-file were filed with the court on 8/20. Again, please check with the court before asking me.

The first email was sent two days after both the FAC and motion to e-file had been filed. It is important to note that the court docket had reflected this fact since August 20, 2007.

Two things were immediately apparent to Omoregie upon reading the first email. First, it was clear that Coelho had not been reviewing the court docket; if he had, he would have known that the FAC had already been filed. (Omoregie Decl. ¶ 20.) And second, that Coelho had not actually read the motion to e-file. Id. This motion consisted of 12 lines and simply asked the Court to give Omoregie permission to file documents electronically.

Omoregie did not feel that it was appropriate for opposing counsel to rely on him to determine what was filed or explain his motions. Id. at 21. Therefore, Omoregie instructed Coelho to check with the Court to determine what had been filed and also to only contact him regarding issues that the Court requires opposing parties to discuss,[5] or possible settlement offers. It should be noted that Boardwalk has misquoted this statement in all their oppositions. Omoregie at no point told Coelho to contact him only regarding issues that the Court has ordered

---

[5] Examples of such issues are those discussed in Fed. R. Civ. P. 26, Civ. L. R. 16 or any other topic on which parties are meant to meet and confer.

them to discuss. Omoregie's email was an attempt to prevent opposing counsel from contacting Omoregie in order to obtain information that was readily available to opposing counsel through other avenues. Additionally, by reducing the amount of contact between Omoregie and opposing counsel to essential matters, Omoregie was trying to avoid issues of misrepresentation.[6]

Coelho was told in the final email exchange that both the FAC and motion to e-file were filed on August 20, 2007. In his declaration, Coelho claims that after these exchanges, he was "under the impression that [Omoregie] was going to file a motion for leave to file the [FAC], and that the operative complaint was the original complaint." (Coelho Decl. ¶ 5.) Coelho additionally claims that Omoregie informed him that he would try to obtain a default against Boardwalk on August 29, 2007. Id. ¶ 3. However, the actual communication between Coelho and Omoregie show that Coelho's assertions are incorrect. Boardwalk was warned that if they did not timely respond, a default would be sought against them.

### C. Order of Events on September 5, 2007.

Boardwalk repeatedly claims that on September 5, 2007, Omoregie informed them before he applied for default. However, the correct order of events is that Omoregie first filed for entry of default at 7:17 am Pacific Time. (Omoregie Decl. ¶ 22.) Omoregie then informed Boardwalk that he had applied for default and that he would also be seeking Rule 11 sanctions against Rose, Vucinich, and Clapp at 8:01 am Pacific Time.[7] Id. This order of events is proven by the time stamp on the email sent to Boardwalk and the CM/ECF notice of electronic filing. (Omoregie

---

[6] This full email exchange aids rather hurts Omoregie's claim by showing that Boardwalk was denied previous extensions, warned that failures to plead would not be tolerated, and instructed to monitor the court docket for themselves. It was not included in the moving papers because Omoregie did not believe the entire email exchange was materially relevant to the motions made. In hindsight, Omoregie realizes that Coelho could have been more politely told to investigate the matters himself.

[7] Omoregie sent the email to Rose and Vucinich from New York; therefore, Omoregie converted the time from Eastern Time to Pacific Time.

Decl., Exhibit K and L.) The order of events asserted by Boardwalk is false. In two out of three of their oppositions,[8] Boardwalk claims that Omoregie called them in advance of filing the entry of default, this however is untrue. (Omoregie Decl. ¶ 23.) No records exist of such call and none of the recorded correspondence between parties suggests that such a call occurred.

### D. **Boardwalk's Claim That Omoregie Refused to Send the FAC.**

Boardwalk claims that Omoregie refused to send them a copy of the FAC once they requested it on September 5, 2007. Omoregie knew from his correspondence with Coelho that not only had Boardwalk received the FAC, but they had provided it to their counsel. Omoregie did not immediately respond to Clapp's request because he was unsure what to do. (Omoregie Decl. ¶ 24.) He thus decided to research the case law on the issue to determine the proper course of action. Id. However, before he was done, the issue became moot because Clapp responded to the FAC. Id. The statement that Omoregie refused to provide the FAC is false. Additionally, though Boardwalk claims to have called Omoregie, to obtain a copy of the FAC, Omoregie never received such a call, nor was he left a message. Id.

## 2. **Facts That Require Further Comment.**

There are several facts discussed by Boardwalk that though not entirely in dispute deserve further comment.

### A. **Action Was Brought Two Years into Lease.**

Boardwalk noted that this action was brought two years after the signing of the lease agreement between Omoregie and Boardwalk. However, it should be noted that upon learning of Boardwalk's misrepresentation, Omoregie immediately attempted to contact Boardwalk. (Omoregie Decl. ¶ 25.) After nearly a dozen calls, Omoregie finally was able to get in touch with someone at Boardwalk on October 25, 2005. Id. From October 25, 2005 to June 15, 2007,

---

[8] This claim is not made in any of Boardwalk's declarations.

Omoregie attempted to resolve this matter with Boardwalk during various meetings and correspondences. Id. Boardwalk was repeatedly told that if a settlement could not be reached, Omoregie would seek the aid of the Court in resolving this matter. Id. For example, on September 13, 2006 and June 15, 2007, letters were sent to the representatives of all three defendants notifying them of all the issues and warning that a suit would be brought if these issues could not be resolved. Id. Omoregie waited to bring this suit because he initially attempted to resolve this matter without court intervention. Id.

### B. FAC Was Filed on August 20, 2007.

Additionally, Boardwalk notes that the FAC was not filed until August 20, 2007. A document served under Rule 5 by a non-e-filer cannot be filed without first serving the necessary party. Fed. R. Civ. P. 5(d). On August 15, 2007, Omoregie mailed the FAC, the motion to e-file, and proofs of service to the Clerk. (Omoregie Decl. ¶ 6.) A return envelope with sufficient postage was also included and the Clerk thus returned stamped copies of the filed documents. Id. Rule 5 only requires that documents be filed a reasonable time after service. Fed. R. Civ. P. 5(d). It is hard to argue that mailing the FAC and the motion to e-file to the Clerk a day after service is not reasonable.

### C. Boardwalk's Counsel Received the FAC.

Boardwalk also attempts to create a distinction between its separate counsels. From the attached correspondence, it is clear that Coelho stated that he and Merrill were retained to represent Boardwalk in this action. It is also clear that not only did Boardwalk receive the FAC, but that they also delivered it to their counsel. It is unclear why Boardwalk obtained additional counsel on the day their answer was due, why Merrill did not provide Clapp with a copy of the FAC, or why Clapp did not review the docket to determine what had been filed in this case

before they submitted Boardwalk's answer.  Boardwalk's current attempt to show the existence of a plot on the part of Omoregie to hide the filing of FAC from them and then take their default appears to be an attempt to create a factual pattern similar to <u>Livermore Corp. v. Aktiengesellshaft Gebruder Loepfe</u>, 432 F.2d 689 (D.C.D.C 1970), a case discussed in defendant Opposition .

### D. **Omoregie's Declination of Boardwalk's Requests.**

Boardwalk also makes much of the fact that Omoregie declined Coelho's request for an extension of time to respond, did not provide Coelho with a copy of the proof of service, and did not respond to Rose's request for an extension of time to respond.  A plaintiff has the right to decline all these requests.  Boardwalk refused to accept delivery of a waiver of service form that would have provided them 40 additional days to respond.

Sylvia P. Doneza, a registered California process server physically served Boardwalk via Seiffe.[9]  Rule 4(l) is quite clear that proof of service only needs to be provided to the Court.  Coelho's request for the proof of service was suspect and thus declined.

Omoregie freely admits that though he was not able to respond to Rose before Boardwalk's first answer was filed, he would have declined the request for additional time unless he was provided with an extraordinarily compelling reason why Boardwalk obtained new counsel on the day their answer was due and why Merrill had done apparently no work on this case. (Omoregie Decl. ¶ 26.)As discussed above, Omoregie had unsuccessfully attempted to resolve matters prior to filing a suit for over a year.  As a result of his previous efforts, Omoregie wanted to resolve this suit expeditiously.

---

[9] Though service was confirmed by Coelho in both of his email exchanges with Omoregie a declaration from Ms. Doneza stating that personal service was effectuated is include with this reply as Boardwalk has alluded to the possibility that such service did not occur.  The steps taken by Omoregie to effectuate service are discussed in Omoregie's declaration in support of this reply. (Omoregie Decl. 4.)

### III. DISCUSSION OF DEFENDANTS' ARGUMENTS

**1.      Motion for Entry of Default.**

     **A.  Boardwalk's First Answer Was Not a Formal Appearance.**

Boardwalk arguments that a default cannot be entered against a party that has filed a response that indicates its intention to defend. This is false. The Ninth Circuit has repeatedly upheld default judgments against parties that have filed documents with the court. In Wilson v. Moore, 563 F.2d 366 (9th Cir. 1977), the court upheld a default judgment against a defendant that simply sent a letter to the plaintiff and the court's clerk stating why he felt he was innocent. Additionally, in Benny v. Pipes, 799 F.2d 489 (9th Cir. 1986), the court held that a defendant had failed to appear despite filing numerous motions for extensions of time to answer. It is thus clear that in this Circuit that not all filings and attempts to defend rise to the level of formal appearance. In this case Boardwalk's answer to the original complaint clearly failed to meet any of the pleading standards required by the Federal Rules of Civil Procedure. Boardwalk freely admits that it was filed solely to avoid default. Boardwalk's counsel also admits that they filed this answer without input from their client. Furthermore, the answer is non-responsive to the FAC. For these reasons, Boardwalk's answer does not meet the requirements of a formal appearance.

The cases cited by Boardwalk can be distinguished from this action. In Livermore, 432 F.2d 689, the plaintiff and defendant engaged in settlement discussion after the action was filed. The court found that the plaintiff actively concealed its intent to enter default from the defendant. In this action, the discussions between Omoregie and Boardwalk never reached such a level. Furthermore, Boardwalk was warned in their first communication with Omoregie, during this action, that a failure to timely respond to the FAC would result in a request for entry of default.

It is also worth noting that in <u>Wilson</u>, 563 F.2d at 369, this Circuit explicitly rejected the informal contact standard of appearance used in <u>Livermore</u>.

In <u>Washington Nation Insurance Co. v. Hendricks</u>, 8 F.Supp. 1542 (W.D. WI 1994), the court refused to enter default against a defendant because they had failed to timely respond to a second amended complaint. The court reasoned that the defendant's response to the second amended complaint was completely predictable from the defendant's response to the first amended complaint, so therefore, the court found that the plaintiff suffered no prejudice. Unlike in <u>Washington</u>, Boardwalk's response to the FAC was not predictable from their response to the original complaint. Boardwalk's response in their first amended answer was also not predictable from their response to the FAC. Both answers were in gross violation of Rule 8 and Rule 11. In this manner, Omoregie faced prejudice that the plaintiff in <u>Washington</u> did not face.

### B. <u>Significance of a Formal Appearance</u>.

Boardwalk's repeated references to their intent to defend in their oppositions are irrelevant. The full relevant section of Rule 55(a) reads "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend <u>as provided by these rules</u> and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." The only protections from default are the defenses clearly articulated in the Federal Rules of Civil Procedure. See <u>Wilson</u>, 563 F.2d at 369-70, <u>Benny</u>, 799 F.2d at 494-5. Boardwalk's mention of their making a formal appearance is however relevant, though Boardwalk misstates it relevance. The significance of whether or not an appearance has been made affects whether a request for a default judgment should be made to the Court or to the Clerk. If an appearance has been made, then a request for entry of default must be made to the Court. If no appearance has been made, then a request may be directed at the Clerk. If the Court finds that Boardwalk has

made a formal appearance,[10] the Court still has the discretion to enter a default against Boardwalk. U.S. v. Brow, 2006, U.S. Dist. LEXIS 64361, 7 (E.D.N.Y 2006). According to Brow, if the Court decides to examine this issue the "[the] Court need do no more than the clerk in performing this same function." Id. 7. Therefore, the Court need only determine if Omoregie presented sufficient facts to show that Boardwalk was in default.

### C. Clerk's Role as Purely Ministerial.

Neither Boardwalk nor their co-defendants attempted to argue with the central premise of the motion for entry of default, i.e., that the Clerk's is given a purely ministerial role under Rule 55(a). There thus appears to be no dispute over this issue. The question then should be whether the Clerk was properly allowed to perform this function. Boardwalk's co-defendants argue that as a result of their opposition to the request that "the Clerk plainly realized that the facts presented by Plaintiff did not support a valid entry of default." (Defs' Opp'n Mot. Entry of Default 4.) This argument supports Omoregie's position that the Clerk was forced to use his discretion and adjudicate over opposing positions in contradiction to what Rule 55(a) envisions. Additionally, the submission of Boardwalk's answer to the FAC may have also inappropriately influenced the Clerk. The case law is clear that such an untimely submission provides no protection from default. McManus v. American States Ins. Co., 201 F.R.D. 493, 499 (C.D. Cal. 2000); Gaglio v. Silverman (In re Suprema Specialties, Inc.), 330 B.R. 40, 46 (S.D.N.Y. 2005).

### D. Denial of Motion to Set Aside.

Boardwalk incorrectly states the standard for determining whether good cause exists to set aside a default. The proper test is that introduced in Falk v. Allen, 739 F.2d 461, 463 (9th

---

[10] In 4-27 MB Prac. Guide: Fed. Pretrial Civ. P. in CA, no reference is made to this significance of a formal appearance. Omoregie used this source in determining his course of action as to Boardwalk's failure to timely respond to the FAC. If the Court finds that a formal appearance has been made by Boardwalk and that Omoregie should have directed a request for default at the Clerk, Omoregie apologizes for not doing so original.

Cir. 1984). The test consists of three factors: 1) prejudice to the plaintiff, 2) whether defendants have a meritorious defense, and 3) culpability of the defendant. The Court may properly deny a motion to set aside a default if they find any one of the factors to be against the defendants. See Pena, 770 F.2d at 815. As stated above, Boardwalk is culpable for their default and Omoregie was prejudiced by their actions.

Boardwalk's showing of a meritorious defense is inadequate. To show a meritorious defense a defendant "must present specific facts that would constitute a defense." TCI Group v. Knoebber, 244 F.3d 691, 700 (9th Cir. 2000). Boardwalk asserts that the 2005 new Jetta Value Edition offer at a lower lease price was distinct from the 2005 new Jetta Value Edition leased by Omoregie and that the evidence will show that Omoregie was not discriminated on based on race. Neither of these defenses is responsive to an allegation of fraud. It was alleged in the FAC that an employee of Boardwalk made misrepresentations over the existence of the promotional offer. (FAC ¶ 12, 16.)

Additionally, the statement of Boardwalk's counsel that they will prove that no discrimination occurred is not a specific fact, rather it a conclusory statement. Boardwalk's burden in this case is high. Under the burden shifting mechanism of the Equal Credit Opportunity Act ("ECOA"), once a plaintiff has presented a prima facie case for discrimination the burden then shifts to the defendant to present a non-discriminatory reason for not extending to the plaintiff the same credit terms that was held out to the public. Chiang v. Veneman, 385 F.3d 256 (3d Cir. 2004). Here a prima facie case for discrimination is laid out in the FAC. It was alleged that Boardwalk was a creditor under the ECOA. (FAC ¶ 33.) The FAC alleged Omoregie to be a member of a racial minority and of a foreign nationality, (FAC ¶ 4.), thus showing he was a member of two protected classes. The FAC alleged that the promotional offer

for the Jetta was held out to the public. (FAC ¶ 16, 22, 25.) It was also alleged that as a result of Omoregie's high credit score that he was qualified for the offer. (FAC ¶ 16, 22, 26.) It is thus Boardwalk's burden to show a non-discriminatory reason for their not extending this offer to Omoregie. As Boardwalk has failed to do this they have not presented a meritorious defense under the ECOA.[11] Even if Boardwalk was able to show that the 2005 new Jetta Value Edition in the promotional offer and the 2005 new Jetta Value Edition leased by Omoregie were somehow distinct this would do nothing to disrupt the claim brought under the ECOA. Boardwalk could still be found to have discriminated against Omoregie in a credit transaction by making misrepresentations on the existence of a credit term held out to the public. Boardwalk's presentation of a defense can therefore be seen as meritless on both the fraud and ECOA claims.

For the reasons stated above, if a default is entered against Boardwalk it should rightfully not be set aside. As Boardwalk has attempted to make a motion to set aside any default an order to show cause is thus no longer appropriate.

**E. <u>Omoregie Was Required to Notify Boardwalk Before the Request for an Entry of Default</u>.**

Boardwalk claims that it was required to be notified before Omoregie sought a default. This is not true. The defendants had actual and constructive knowledge of which complaint required an answer and did not provided an answer for that complaint. Boardwalk's answer to the original complaint was insufficient to avoid a default for failure to timely respond to the FAC. 4-27 <u>MB Prac. Guide: Fed. Pretrial Civ. P. in CA</u> § 27.04[1]. Omoregie informed Boardwalk of the Request because this was suggested by 4-27 <u>MB Prac. Guide: Fed. Pretrial</u>

---

[11] It is worth noting that Boardwalk's co-defendants face a similar burden. Motor vehicle financing corporation cannot avoid liability under ECOA by delegating aspects of financing transaction to its dealers. <u>Coleman v GMAC</u>, 196 F.R.D. 315 (M.D. Tenn. 2000). Similarly in California, one may not enable fraud, accept profits, and then escape liability.

Civ. P. in CA. 4-27 MB Prac. Guide: Fed. Pretrial Civ. P. in CA § 27.05[4] suggests notifying parties of a request for default primarily because judges believe such notification is the proper course. It is clearly not the law in this Circuit that defaulting parties must be notified before an application for an entry of default is made. Hawaii Carpenters' Trust Funds v. Stone, 794 F2d 508, 512 (9th Cir. 1986); 4-27 MB Prac. Guide: Fed. Pretrial Civ. P. in CA § 27.05[4]. Contrary to Boardwalk's assertions, notification of a defendant who knows or should know that an answer is due, had notice that no failures to plead would be tolerated by the plaintiff, and has then chose not to properly plead or otherwise defend in accordance with the Federal Rule of Civil Procedure is not required by good practice, common courtesy, or Ninth Circuit law.

**2.     Motion for Rule 11 Sanctions and Motion Rule to Strike.**

    **A.   Clapp and Boardwalk's Justification.**

It should be noted that neither Clapp nor Boardwalk have made an attempt to show that the content of either answers meet the requirements of Rule 8 or Rule 11. In fact, Clapp freely admits to not meeting with Boardwalk before filing either of their answers.[12] Their oppositions appear to only attempt to improperly place the blame on Omoregie for their failure to respond in a timely manner. They attempts to justify their actions make it appear as though Omoregie caused them to answer the wrong complaint. Additionally, they place the blame on Omoregie's denying their request for more time to file on August 17, 2007 and failed to promptly respond to their request for more time on August 28, 2007. This allegation is without merit. Omoregie was under no obligation to consent to an extension of time. Furthermore, the defendant could have petitioned the Court for additional time.

    **B.   Rule 11 Safe Harbor.**

---

[12] No court has ever held that a total lack of investigation could under any circumstances ever be reasonable.

Clapp misstates the purpose of Rule 11's safe harbor provision. The safe harbor provision is located in Rule 11(c)(1)(A), under the section entitled "How Initiated." It is a procedural provision and does not bestow a right on culpable parties. The safe harbor provision is not a means by which parties can escape responsibility for their conduct. In fact, regardless of whether a challenged filing is withdrawn or corrected with 21 days, the court always retains the power to sanction culpable parties on its own initiative. Boardwalk puts forth an interpretation of the provision that would allow culpable parties to "test the waters" by consciously violating Rule 11 and safely retreating when challenged by their opponents. In this case, Boardwalk lost the right to amend their pleading as a matter of right because they twice filed frivolous documents with the court. To avoid sanction Boardwalk could have withdrawn their answers or petitioned the court for leave to amend.

### C. <u>Doctrine of Unclean Hands</u>.

The doctrine of unclean hands is clearly inapplicable here. Boardwalk's refusal of the waiver of service form was the direct cause of their answer being due on September 28, 2007. They were informed that this was the reason why they would not be given additional time to respond on August 18, 2007. They then obtain new counsel on the day their answer was due. To attempt to escape liability for their actions by invoking this doctrine deserves little comment.

Respectfully submitted,

By: /s/ Osahon Omoregie

Pro Se

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that service of the foregoing Motion and supporting declarations were made upon the following counsels through the Electronic Filing System on the 24th day of October, 2007.

Jeffrey Michael Vucinich
Clapp Moroney Bellagamba & Vucinich
1111 Bayhill Drive
Suite 300
San Bruno, CA 94066

Joshua W. Rose
Clapp Moroney Bellagamba and Vucinich
1111 Bayhill Drive
Suite 300
San Bruno, CA 94066

Lisa Marie Simonetti
Stroock & Stroock & Lavan LLP
2029 Century Park East
Suite 1800
Los Angeles, CA 90067-3086

Brian C. Frontino
Stroock & Stroock & Lavan LLP
2029 Century Park East
Suite 1800
Los Angeles, CA 90067-3086

              By: /s/ Osahon Omoregie

              Osahon Omoregie
              42 Otsego Ave.
              New Rochelle, NY 10804