Osahon Omoregie
42 Otsego Ave.
New Rochelle, NY 10804
(917) 805-8309
(413) 803-5514 (FAX)
oomoregie@gmail.com

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OSAHON OMOREGIE, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-cv-03884 PJH |
| ) | |
| vs. ) | NOVEMBER 7, 2007, 9:00 A.M. |
| ) | |
| BOARDWALK AUTO CENTER, INC. and ) | PLAINTIFF'S REPLY TO |
| VW CREDIT LEASING, LTD. and ) | DEFENDANTS VW CREDIT, INC. |
| VW CREDIT, INC., ) | AND VW CREDIT LEASING, |
| ) | LTD.'S OPPOSITION TO MOTION |
| Defendants. ) | FOR ENTRY OF DEFAULT AND |
| ) | MOTION FOR SANCTIONS |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................................ 1

II. DISCUSSION OF FACTUAL ISSUES RAISED IN DEFENDANTS' OPPOSITIONS......... 1

   1.   Facts in Dispute.................................................................................................................... 1

      A.  Personal Service of VWL and VWC. ............................................................................ 1

      B.  Events on August 14, 2007. ............................................................................................ 3

      C.  Whether Omoregie Was Aware That Defendants' Answers Were Due on October 9, 2007..................................................................................................................................... 3

      D.  Date Defendants' Answer Was Due .............................................................................. 4

      E.  Defendants Returned the Waiver in Good Faith. .......................................................... 4

      F.  Defendants Amicably Attempted to Resolve the Dispute on September 5, 2007. ............... 5

   2.   Facts Discussed by Defendants That Require Further Comment. ...................................... 5

      A.  On July 31, 2007 and August 6, 2007 Omoregie Sent Documents to Defendants. ............. 5

      B.  FAC Was Filed on August 20, 2007. ............................................................................. 7

      C.  In the Request Omoregie Did Not Mention the Waiver of Service or Attach a Copy of the Proofs of Service.................................................................................................................. 8

III. DISCUSSION OF DEFENDANTS' ARGUMENTS ............................................................... 8

   1.   Motion for Entry of Default................................................................................................. 8

      A.  Clerk's Role as Purely Ministerial. ................................................................................ 8

      B.  Entry of Default............................................................................................................... 9

      C.  Defendants' Discussion of Rule 4 and Rule 5 Service................................................. 10

      D.  Good Practice and Common Courtesy Require Notification before a Default Is Taken.. 11

      E.  Defendants' Combining of Identities. .......................................................................... 11

F. Defendants' Policy Argument. ........................................................................................ 12

2. Motion for Sanctions................................................................................................... 12

   A. Sanctions. ................................................................................................................... 12

   B. Defendants' Prohibition on Challenging Future Defaults................................................ 13

# TABLE OF AUTHORITIES

**Cases**

AT&T v. Merry, 592 F.2d 118 (2nd Cir. 1979) .......................................................................... 10

Benny v. Pipes, 799 F.2d 489 (9th Cir. 1986) ............................................................................ 9

Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508 (9th Cir. 1986) .................................. 11

Oklahoma Radio Associates v. FDIC, 969 F.2d 940 (10th Cir. 1992) ...................................... 10

Pena v. Seguros La Comercial, S.A., 770 F.2d 811 (9th Cir. 1985) ............................................ 1

Wilson v. Moore, 563 F.2d 366 (9th Cir. 1977) ......................................................................... 9

**Other Authorities**

4-27 MB Practice Guide: Fed Pretrial Civ. P. in CA ............................................................ 8, 11

# I. INTRODUCTION

The central theme of all three defendants' oppositions is that they are without culpability for their default. This is not true. In the Ninth Circuit, the test for culpability for a default is based on whether the defendant had actual or constructive knowledge of their requirements to respond. Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 815 (9th Cir. 1985). The court docket reflected the due dates for each defendant's answer on August 20, 2007. On that date, the docket also reflected that a FAC had been filed. Thus, at the very least, all defendants had constructive knowledge that answers to the FAC were necessary and the dates they were due.[1] Though the issue was raised in the moving papers, none of the defendants has attempted to explain why they were not able to properly monitor the court docket. Given the high stakes involved in this action, their failure to properly plead in accordance with the Federal Rules of Civil Procedure can be seen to be the result of their own culpable conduct.

## II. DISCUSSION OF FACTUAL ISSUES RAISED IN DEFENDANTS' OPPOSITIONS

**1.    Facts in Dispute.**

**A.    Personal Service of VWL and VWC.**

VW Credit, Inc. ("VWC") and VW Credit Leasing, Ltd. ("VWL") (together "Defendants") take the position that personal service was never effectuated based on the proofs of service on file with the Court. Defendants point to defects in the proofs of service to support

---

[1] General Order No. 45 (IV) required counsel for all defendants to register "upon notification that the action [was] subject to ECF." They were all notified with service of process. If they had registered they would have received notification of every filing. Additionally, General Order No. 45 (IX)(A), "strongly encourages [parties] to check the docket in their case on the electronic filing system regularly."

this argument.[2] Admittedly, the proofs of service are far from perfect. However, they clearly show that on August 14, 2007, John A. Garber served process on VWL by serving Allison Berl, an employee of Wilmington Trust Company, the registered agent authorized to receive service of process, at 1100 N. Market Street, Wilmington, DE; and on August 14, 2007, Robert Hall served process on VWC by serving Margaret Wilson, an employee of CT Corp., the registered agent authorized to receive service of process, at 818 W. 7th Street, Los Angeles, CA. To cure any defect in the original proofs of service the <u>professional</u> process servers that served all three defendants have executed declarations attesting to these facts. (Garber Decl.; Hall Decl.) Additionally, the steps taken to effectuated service are discussed in Omoregie's declaration in support of this reply. (Omoregie Decl. ¶ 4.) If any doubt remains as to whether personal service was effectuated the Court may, if it deems it proper, order Mr. Garber and Mr. Hall to either execute affidavits or give live testimony. Additionally, Ms. Berl and Ms. Wilson who are in the employment of Defendants' registered agents of service can also be called to execute affidavits or give testimony as to whether or not VWL and VWC were served via their respective agents.

     The proofs of service clearly indicate that both Ms. Berl and Ms. Wilson physically received process. Rather than obtaining declarations or affidavits from them or their employers stating that service was never effectuated; VWL and VWC base their arguments on defects in the proofs of service.[3] Defendants' arguments are disingenuous. As was noted in the moving papers, personal service was necessary only because one of these two defendants, VWC, returned unexecuted waiver of service forms. As a direct result, both defendants were personally

---

[2] Defendants also state that the records from their registered agent of service show that the FAC was not physically served on August 16th or 17th. (Defs' Opp'n Mot. Entry of Default 2.) In the moving papers and here it has always been maintained the both defendants were physically served on August 14, 2007.

[3] Any defects in the proofs of service do not affect the validity of service. Fed. R. Civ. P. 4(l).

served with process the very next day. This is why they lost the benefit of 40 additional days to reply.

### B. Events on August 14, 2007.

As concerns Defendants and this motion, four separate and distinct events occurred on August 14, 2007. First, VWL was served with process by Mr. Garber. (Garber Decl.) Second, VWC was served with process by Mr. Hall. (Hall Decl.) Third, once Omoregie was made aware that service was effectuated, Omoregie mailed the FAC to VWL. (Omoregie Decl. ¶ 5.) And finally, contemporaneously with mailing the FAC to VWL, Omoregie mailed another copy of the FAC to VWC. Id. Though the FAC was included in the papers personally served on Defendants, it was also mailed to them in order to create a certificate of service, pursuant to 5(d), that could be included with the FAC when it was filed. The next day, the FAC was mailed to the Clerk's Office, where it was filed the following Monday, which was August 20, 2007.[4] (Omoregie Decl. ¶ 5.)

### C. Whether Omoregie Was Aware That Defendants' Answers Were Due on October 9, 2007.

Defendants claim that Omoregie was well aware of the fact that their answers were due on October 9, 2007. This is false. When Omoregie became aware of the waiver of service forms it was after the court docket reflected that both defendants' answers were due on September 4, 2007. (Omoregie Decl. ¶ 7.) Additionally, Omoregie was aware that both defendants had sent back the same waiver of service form three days after they were served with process. Federal Rule of Civil Procedure 4(d)(3) clearly indicates that a defendant only receives the benefit of an additional 40 days to respond to a complaint if they return the waiver of service before they are served with process. Since Omoregie knew the court docket reflected the correct date

---

[4] The FAC was mailed to the Court from New York.

Defendants' answers were due there existed no need to contact Defendants regarding the waivers.[5] For these reasons Omoregie correctly believed that the Defendants' answers were due on September 4, 2007.

### D. Date Defendants' Answer Was Due.

Defendants claim that their answer was due on October 9, 2007. This is clearly false. Even assuming that they received the benefit of 40 additional days from August 6, 2007, their answer would actually have been due on Friday, October 5, 2007, which is 60 days from August 6, 2007.

Additionally, the waiver was sent with a notice that clearly indicated the date on which it was sent. The material returned by CT. Corp. shows this to be true. The letter dated August 3, 2007 states that notices were being returned to Omoregie. (Omoregie Decl. ¶ 8.) A copy of one of those notices is attached to the Declaration of Osahon Omoregie, along with the other material returned by CT Corp., as Exhibit F. Before mailing the packages containing the waiver of service, Omoregie made copies of the notices sent to all three defendants. Id. The copy of the notice sent to VWL, which was the only one not returned by any of the three defendants, shows that the waiver was mailed on July 31, 2007.

However, all of the above is moot because Defendants were served with process <u>before</u> they returned the waivers. Therefore, per Rule 4(d)(3), they were not entitled to an additional 40 days to respond.

### E. Defendants Returned the Waiver in Good Faith.

---

[5] Additionally, the waiver form was suspect in several regards, which were discussed in the moving papers, and Omoregie believed it best just to not address these issues with Defendants' counsel as it was clear what date the Court expected Defendants' answers.

The Defendants also claim that they returned the waiver in an effort to show good faith compliance of Rule 4(d)(2). However, this is somewhat doubtful. The form was returned three days after they were physically served.

**F. Defendants Amicably Attempted to Resolve the Dispute on September 5, 2007.**

Defendants claim that their attempt to amicably resolve the dispute on September 9, 2007 was refused by Omoregie. It is true that they requested additional time to respond, and that that request was denied by Omoregie. (Omoregie Decl. ¶ 10.) However, there was nothing amicable about their request. Defendants denied being served, which was clearly untrue. Id. Furthermore, Omoregie denied the request for additional time because he believed that the request was an attempt to prolong this suit.[6] It is worth noting that the due date for both Defendants' answers had been on the court docket for over two weeks.

**2.   Facts Discussed by Defendants That Require Further Comment.**

There are several facts discussed by Defendants that though not entirely in dispute deserve further comment.

**A. On July 31, 2007 and August 6, 2007 Omoregie Sent Documents to Defendants.**

Defendants state that "[b]etween July 31, 2007 and August 6, 2007, Plaintiff sent various documents to [Defendants]…." (Defs' Opp'n Mot. Entry of Default 2.) It is true that on July 31, 2007 and August 6, 2007 Omoregie sent documents to both defendants. It is important to note that exact copies of all the documents were sent to both defendants as separate parties. (Omoregie Decl. ¶ 8.) As the documents returned by CT Corp. show, on July 31, 2007, Omoregie sent both defendants all the documents required by Rule 4(d) (A)-(G) and Civil L.R.

---

[6] After Defendants' counsel was put on notice as that their clients had been served and that the waiver of service form was sent on July 31, 2007, Defendants still took a total of 64 days to respond.

4-2. These documents included the Complaint, Order Setting Initial Case Management Conference and ADR Deadlines, Standing Order, Notice of Rule Discontinuing Service by Mail, and Standing Order for all Judges of the Northern District of California: Consent of Joint Case Management Statement.  In the moving papers Omoregie stated that he also served the summons, however, on re-examination of his records and what was returned by CT Corp, he no longer believes this to be true.

On August 6, 2007, Omoregie became aware that General Order 45 (V)(D) required a copy of the ECF Registration Information Handout also be served on all defendants.  (Omoregie Decl. ¶ 12.)  Omoregie thus sent a copy of ECF Registration Information Handout along with Notice of Assignment of Case to United States Magistrate Judge for Trial, Consent to Proceed Before a United States Magistrate Judge, Declination to Proceed Before a United States Magistrate Judge and Request for Reassignment to United States District Judge, and a letter from the Court regarding the deadline to decide whether to proceed before a Magistrate Judge, which he had received from the Court.[7]  The documents returned by CT Corp. reflect this.  Id.  Counsel for Defendants, Brian Frontino ("Frontino") of Stroock & Stroock & Lavan LLP, in his declaration in support of the opposition to the request for entry of default (filed September 6, 2007), on page 23 of Exhibit A, attached the letter sent by Omoregie on August 6, 2007, which stated that additional documents were being sent, followed by the document discussed in this paragraph as being sent on August 6th.  However, in Frontino's Declaration in opposition to these instant motions, in Exhibit A, the order of the documents have been re-arranged to make it appear as if the August 6, 2007 letter was accompanied by the complaint and the waiver of service form.  Now the letter sent by Omoregie on August 6th is now the first page in the exhibit.

---

[7] Omoregie was unsure whether these forms were required to be served, however, he decided it would be better to provide the defendant with more information regarding the case. (Omoregie Decl. ¶ 12.)

This appears to be an attempt to make their confusion over the date on which the waiver was sent seem more reasonable.

Defendant's confusion over when the waiver was sent was not reasonable. A professionally registered agent of service received all the documents that were sent on July 31, 2007 and August 6, 2007. Only one fax cover sheet was included by defendants from their registered agents of service in their exhibits.[8] (Frontino Decl. in Supp. of Defs' Opp'n Mot. Entry of Default, Exhibit D.) That cover sheet shows that the FAC was faxed to the VWC the day it was received and additionally the postmark date of the delivery, August 14, 2007, was also noted. Any confusion on the part of Defendants' counsel could easily have been resolved with simple phone call to the registered agents of defendants or Defendants' counsel could have checked the court docket.

### B. <u>FAC Was Filed on August 20, 2007</u>.

As noted above, Defendants argued that the FAC was not filed until August 20, 2007. A document served under Rule 5 by a non-e-filer cannot be filed without first being served on the necessary party. Fed. R. Civ. P. 5(d). On August 15, 2007, Omoregie mailed the FAC, the motion to e-file, and proofs of service to the Clerk. (Omoregie Decl. ¶ 6.) A return envelope with sufficient postage was also included and the Clerk thus returned stamped copies of the filed documents. Rule 5 only requires that documents be filed a reasonable time after service. Fed. R.

---

[8] The fax cover sheet relating to the documents sent on July 31, 2007 and August 6, 2007 was not included in any of defendants' exhibits, though the documents for those dates were and can clearly be shown to have been sent by fax. It is entirely possible that the fax cover sheet from those dates identified the postmarked date of each document, i.e., that pages 1-24 were postmarked on July 31, 2007 and pages 25-31 were postmarked on August 6, 2007. Included in Exhibit B of Frontino's declaration in support of these instant motions, is a cover letter from one of the defendants' registered agents of service. Portions of this letter are redacted so it is difficult to say exactly what notification was given Defendants.

Civ. P. 5(d). It is hard to argue that mailing the FAC and the motion to e-file to the Clerk a day after service is not reasonable.

### C. In the Request Omoregie Did Not Mention the Waiver of Service or Attach a Copy of the Proofs of Service.

It is true that Omoregie neither mentioned the waiver of service nor attached a copy of the proof of service in the request. In preparing the request, Omoregie used 4-27 MB Practice Guide: Fed Pretrial Civ. P. in CA checklist for entry of default as a template. § 27.03. (Omoregie Decl. ¶ 13.) As the checklist is focused more on defaults that occur as a result of defendant's failure to respond to the original complaint, Omoregie modified the checklist accordingly and thus submitted a certification of service for the FAC in lieu of a proof of service for the original complaint. Id. As the proof of service had been on file with the Court, this appeared to be the most appropriate course of action. Id.

No reference was made to the waiver of service as it was not relevant. (Omoregie Decl. ¶ 14.) Defendants were served before they returned it and thus under Rule 4(d)(3) were not entitled to additional time to respond. Additionally, the court docket had reflected since August 20, 2007, the due date of the Defendants' answers so no ambiguity existed for the Court or Omoregie as to when the answer was due. Defendants should have responded by September 4, 2007.

### III. DISCUSSION OF DEFENDANTS' ARGUMENTS

**1.   Motion for Entry of Default.**

### A. Clerk's Role as Purely Ministerial.

Neither of these defendants nor Defendant Boardwalk Auto Center, Inc. attempted to argue with the central premise of motion for entry of default, i.e., that the Clerk's is given a

purely ministerial role under Rule 55(a). There thus appears to be no dispute over this issue. The question then should be whether the Clerk was properly allowed to perform this function. Defendants VWL and VWC argue that as a result of the Opposition that "the Clerk plainly realized that the facts presented by Plaintiff did not support a valid entry of default." (Defs' Opp'n Mot. Entry of Default 4.) This argument supports Omoregie's position that the Clerk was forced to use his discretion and adjudicate over opposing positions in contradiction to what Rule 55(a) envision.

The Defendants merely state that they incorrectly styled the Opposition as such rather than an objection. (Defs' Opp'n Mot. for Sanctions 3.) However, the point made in the moving papers was that they were not entitled to interfere with the request for entry of default. According to the court docket and the declarations provided by Omoregie, the Defendants were in default. Defendants were allowed to escape a showing of good cause to set aside their defaults and removed Omoregie's right to challenge such a showing. This result illustrates why defaulting parties are not entitled to interfere with a Clerk's entry of default. The Defendants were in effect allowed to make a motion to set aside a default that circumvented the normal mechanisms of the Court. This is the central problem with the Opposition, not how it was styled.

**B. Entry of Default.**

Defendants state that any response indicating any intent to defend prevents an entry of default. (Defs' Opp'n Mot. Santions 4-5.) The case cited by Defendants does not stand for this proposition. Case law in the Ninth Circuit does not support this argument. In Wilson v. Moore, 563 F.2d 366, 370 (9th Cir. 1977), the court upheld a default judgment against a defendant that simply sent a letter to the plaintiff and the court's clerk stating why he felt he was innocent. Additionally, in Benny v. Pipes, 799 F.2d 489, 493 (9th Cir. 1986), the court held that a

defendant had failed to appear despite filing numerous motions for extensions of time to answer. It is thus clear that in this Circuit that not all attempts to defend rise to a level that would prevent an entry of default. Furthermore, in Wilson, 563 F.2d at 369, this Circuit explicitly rejected the informal contact standard of appearance used in other circuits.

### C. **Defendants' Discussion of Rule 4 and Rule 5 Service.**

There is no dispute on the operation of Rule 4.[9] However, Defendants have offered an interpretation of Rule 5 service that is not supported by any case law, the language of the rule, or even the cases that they cite. It is true that service under Rule 5 is only valid if the court has personal jurisdiction over the party server. However, it is not true that such jurisdiction can only be acquired once a party has formally appeared in this action.

The cases cited by Defendants even state that physical service under Rule 4 would give a court sufficient personal jurisdiction to allow Rule 5 service. In AT&T v. Merry, 592 F.2d 118 (2nd Cir. 1979), AT&T sought a declarative judgment against a wife who was trying to enforce a state court alimony judgment against her former husband. In the wife's answer, which was served by mail on the former husband, the wife asserted new cross-claims against him. The court found Rule 5 service there to be inadequate. The court clearly found that "[i]n the absence of proper service, the District Court had no In personam jurisdiction over [the husband]." Merry, 592 F.2d at 126. Additionally, in the other case cited by defendants, Oklahoma Radio Associates v. FDIC, 969 F.2d 940, 943 (10th Cir. 1992), the court specifically states that "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." These cases not only do not support Defendants' assertion, but they directly contradict it.

---

[9] It is however Omoregie's position from the moving papers that there is no benefit of additional time to a defendant who has returned a waiver of service after they have been physically served process. Defendants have not challenged this position issue.

**D. Good Practice and Common Courtesy Require Notification before a Default Is Taken.**

Defendants claim that good practice and common courtesy require notification before a default is taken. This is not true. The defendants had actual or constructive knowledge of when their answers were expect by the Court and Omoregie, and chose not to answer. Omoregie informed them of the Request because this was suggested by 4-27 <u>MB Practice Guide: Fed Pretrial Civ. P. in CA</u>. (Omoregie Decl. ¶ 15.) 4-27 <u>MB Practice Guide: Fed Pretrial Civ. P. in CA</u> § 27.05[4] suggests notifying parties of a request for default primarily because judges believe such notification is the proper cause. It is clearly not the law in this Circuit that defaulting parties must be notified before an application for an entry of default is made. <u>Hawaii Carpenters' Trust Funds v. Stone</u>, 794 F.2d 508, 512 (9th Cir. 1986); 4-27 <u>MB Practice Guide: Fed Pretrial Civ. P. in CA</u> § 27.05[4]. Contrary to defendants assertions, notification of a defendant who knows or should know that an answer is due and has chose not to plead or otherwise defend in accordance with the Rule of Civil Procedure is not required by good practice, common courtesy, or Ninth Circuit law.

**E. Defendants' Combining of Identities.**

Defendants deny that they sidestepped any issues by combining their identities in their opposition to the request for entry of default. (Defs' Opp'n Mot. Entry of Default, FN. 1.) Defendants point to Omoregie's similar acts as justification for their practice. However, it was not Omoregie's argument that such a practice was improper. When proper this practice saves time and is quite efficient. The problem with the Defendants' use of this practice occurred when they stated that they returned a waiver of service addressed to them. In fact, the waiver of service sent back was only addressed to VWL. The one addressed to VWC was returned

unexecuted by CT Corp. Both forms were sent to each defendant's respective registered agents of service. Included with each waiver were two copies of notifications, which clearly identified for which defendant the waiver was intended. Exhibit E of the declaration of Omoregie contains copies of the notices that were made before the waivers were sent on July 31, 2007. Additionally, the letter dated August 3, 2007 sent back by CT Corp. referenced the included notices. The notices were also included in the documents returned by CT Corp. This letter and these documents are attached as Exhibit F to the declaration of Omoregie.

### F. Defendants' Policy Argument.

The defendants also put forth a policy justification for why the motion should be denied. (Defs' Opp'n Mot. Entry of Default 6) They state that "Plaintiff should not be permitted to take advantage of [Defendants] good faith compliance with Plaintiff's request for a waiver by simply serving a new complaint with minor changes." If those were the facts it would represent an injustice that the Court would most likely not stand for. However, the factual matter at issue in this case is whether a defendant who has been physically served process before returning a waiver of service is entitled to disregard the court docket and submit an answer that is late by all accounts but their own. An amended complaint was served on the defendants in this case because Omoregie became aware of additional damages that could be alleged under the ECOA and to reflect the correct name of VWC. The FAC was received by all defendants shortly after service.

### 2.     Motion for Sanctions.

### A.  Sanctions.

Though Omoregie requested that sanction be paid to him, it must be noted that Omoregie is not admitted to practice. (Omoregie Decl. ¶ 16.) If in the opinion of the Court this disqualifies

him from receiving any such sanctions, Omoregie respectfully asks that such sanction be then paid to the Court.

### B. Defendants' Prohibition on Challenging Future Defaults.

Omoregie now believes that the request for the Court to bar Defendants from contesting any future defaults was extreme. Omoregie therefore withdraws that portion of the request for sanction.

Respectfully submitted,

By: /s/ Osahon Omoregie

Pro Se

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that service of the foregoing Motion and supporting declarations were made upon the following counsels through the Electronic Filing System on the 24th day of October, 2007.

Jeffrey Michael Vucinich
Clapp Moroney Bellagamba & Vucinich
1111 Bayhill Drive
Suite 300
San Bruno, CA 94066

Joshua W. Rose
Clapp Moroney Bellagamba and Vucinich
1111 Bayhill Drive
Suite 300
San Bruno, CA 94066

Lisa Marie Simonetti
Stroock & Stroock & Lavan LLP
2029 Century Park East
Suite 1800
Los Angeles, CA 90067-3086

Brian C. Frontino
Stroock & Stroock & Lavan LLP
2029 Century Park East
Suite 1800
Los Angeles, CA 90067-3086

                                    By: /s/ Osahon Omoregie

                                    Osahon Omoregie
                                    42 Otsego Ave.
                                    New Rochelle, NY 10804