STROOCK & STROOCK & LAVAN LLP
LISA M. SIMONETTI (State Bar No. 165996)
BRIAN C. FRONTINO (State Bar No. 222032)
2029 Century Park East
Los Angeles, California 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
lacalendar@stroock.com

Attorneys for Defendants
    VW CREDIT LEASING, LTD. and
    VW CREDIT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSAHON OMOREGIE,<br><br>    Plaintiff,<br><br>    vs.<br><br>BOARDWALK AUTO CENTER, INC., VW CREDIT, INC., and VW CREDIT LEASING LTD.,<br><br>    Defendants. | Case No. C 07-03884 PJH<br><br>**CONSOLIDATED OPPOSITION OF DEFENDANTS VW CREDIT LEASING, LTD. AND VW CREDIT, INC. TO PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND ADD DEFENDANTS**<br><br>Hearing Date:<br>Date:   May 7, 2008<br>Time:   9:00 a.m.<br>Crtrm:  3 |

LA 51045769

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL BACKGROUND .......................................................................................2

    A.    Plaintiff's Initial Complaint (the "Complaint") And The First Amended Complaint (the "FAC") ...................................................................................2

    B.    The Proposed SAC ...................................................................................................3

III. ARGUMENT .......................................................................................................................4

    A.    Standard On Motion For Leave To Amend ..............................................................4

    B.    Plaintiff's Amendments Are Unduly Delayed .........................................................5

    C.    Leave To Amend Should Be Denied Because The Amendment Will Expand The Case And Delay Resolution Of The Present Issues. .............................6

    D.    Amendment Would Introduce Vagueness And Ambiguity To Plaintiff's Pleading. ..................................................................................................................7

    E.    Amendment Would Be Futile ...................................................................................8

        1.    The Statute Of Limitations Has Run On Plaintiff's ECOA Claims Against VALUF And VALT. .......................................................................8

        2.    On The Face Of Plaintiff's Proposed Allegations, VALUF And VALT Could Not Have Been Involved With The Facts Giving Rise To Any Purported ECOA Violation. .......................................................10

        3.    Plaintiff's Fraudulent Deceit And Aiding And Abetting Claims Against VALUF and VALT Similarly Fail. ....................................................11

        4.    This Court Has No Jurisdiction Over VALUF Or VALT. ...........................12

    F.    Plaintiff's Purported Amendments Plainly Are In Bad Faith And Defendants Will Be Severely Prejudiced If Amendment Is Permitted. ....................13

IV. CONCLUSION ..................................................................................................................14

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51045769     - i -

CONSOLIDATED OPPOSITION OF DEFENDANTS VW CREDIT LEASING, LTD. AND VW CREDIT, INC. TO PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND ADD DEFENDANTS - Case No. C 07-03884 PJH

# TABLE OF AUTHORITIES

## CASES

Acri v. Int'l Ass'n of Machinists & Aerospace Workers,
    781 F.2d 1393 (9th Cir. 1986) .................................................................................................5

Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    43 F.3d 1054 (6th Cir. 1995) .................................................................................................14

Calder v. Jones,
    465 U.S. 783, 104 S. Ct. 1482 (1984) ...................................................................................12

Cornelison v. Chaney,
    16 Cal. 3d 143 (1976) ............................................................................................................12

DCD Programs, LTD. v. Leighton,
    833 F.2d 183 (9th Cir. 1987) ...................................................................................................4

Data Disc, Inc. v. Systems Tech. Assocs., Inc.,
    557 F.2d 1280 (9th Cir. 1977) ......................................................................................... 12, 13

Edwards Lifesciences LLC v. Cook Inc., No. C 03-03817 JSW,
    2008 WL 913328 (N.D. Cal. Apr. 2, 2008) ...........................................................................13

Eminence v. Aspeon,
    316 F.3d 1048 (9th Cir. 2002) ...............................................................................................14

In re First Alliance Mortgage Co.,
    471 F.3d 977 (9th Cir. 2006) .................................................................................................11

Florer v. Johnson,
    2007 WL 760524 (W.D. Wash. Mar. 8, 2007) .......................................................................8

Griggs v. Pace American Group, Inc.,
    170 F.3d 877 (9th Cir. 1999) .................................................................................................13

Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,
    784 F.2d 1392 (9th Cir. 1986) ...............................................................................................13

Helicopteros Nacionales de Colombia S.A. v. Hall,
    466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ......................................................13

Hughes Aircraft Co. v. Nat'l Semiconductor Corp.,
    857 F. Supp. 691 (N.D. Cal. 1994) ..................................................................................... 5, 6

International Shoe Co. v. Washington,
    326 U.S. 310, 66 S. Ct. 154 (1945) .......................................................................................12

Louisiana-Pacific Corp. v. ASARCO, Inc.,
    5 F.3d 431 (9th Cir. 1993) .......................................................................................................9

Mende v. Dun & Bradstreet, Inc.,
    670 F.2d 129 (9th Cir. 1982) ...................................................................................................5

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Morongo Band of Mission Indians v. Rose,
    893 F.2d 1074 (9th Cir. 1990) .................................................................................. 5, 6

Saul v. United States,
    928 F.2d 829 (9th Cir. 1991) ........................................................................................ 8

Scott v. Breeland,
    792 F.2d 925 (9th Cir. 1986) ...................................................................................... 12

Serpa v. SBC Telecomms., Inc.,
    318 F. Supp. 2d 865 (N.D. Cal. 2004) ......................................................................... 4

Smiga v. Dean Witter Reynolds, Inc.,
    766 F.2d 698 (2d Cir. 1985) ........................................................................................ 5

United States v. Webb,
    655 F.2d 977 (9th Cir. 1981) ........................................................................................ 4

Wells Fargo & Co. v. Wells Fargo Express Co.,
    556 F.2d 406 (9th Cir. 1977) ...................................................................................... 13

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286, 100 S. Ct. 559 (1980) .......................................................................... 13

**STATUTES**

12 C.F.R. § 202.2 .............................................................................................................. 10, 11

12 C.F.R. § 202.4(a) ............................................................................................................... 10

15 U.S.C. § 1691(a) ................................................................................................................ 10

15 U.S.C. § 1691a(e) .............................................................................................................. 10

15 U.S.C. § 1691e(f) ................................................................................................................. 8

15 U.S.C. § 1691 ....................................................................................................................... 7

Fed. R. Civ. P. 4(k)(1) ............................................................................................................ 12

Fed. R. Civ. P. 8 ....................................................................................................................... 7

Fed. R. Civ. P. 15(c)(1) ............................................................................................................ 9

Code Civ. Proc. § 410.10 ....................................................................................................... 12

**MISCELLANEOUS**

12 C.F.R. Pt. 202, Supp I, § 202.1, 1(a), cmt. 1 ..................................................................... 10

6 Miller, Wright & Kane, Fed. Prac. Procedure § 1473 (1971) .............................................. 5

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51045769                    - iii -

CONSOLIDATED OPPOSITION OF DEFENDANTS VW CREDIT LEASING, LTD. AND VW CREDIT, INC. TO PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND ADD DEFENDANTS - Case No. C 07-03884 PJH

# I. INTRODUCTION

By the instant Motions, Plaintiff Osahon Omoregie ("Plaintiff") seeks to amend his Complaint in bad faith. Plaintiff seeks to convert what is now a claim of discrimination and fraud in connection with the origination of his individual auto lease, into an overall grand scheme to defraud and discriminate against Plaintiff and other consumers through the issuance of securities backed by automobile leases. Plaintiff, with a Harvard undergraduate degree and a Stanford law degree, and who is now a first-year structured finance associate at the New York law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), feigns ignorance of the issues now raised in the proposed amended complaint as the reason for his delay. The circumstances reveal otherwise. The "new" material he relies upon is information in public documents on file with the Securities and Exchange Commission ("SEC") since July 17, 2006 with which he is intimately familiar.

Plaintiff's purported amendments also will introduce vagueness and ambiguity into the pleadings. Defendants VW Credit Leasing, Ltd. ("VCL") and VW Credit, Inc. (itself and together with VCL, "VCI") have expended a great deal of resources defending this action thus far and will now be required to re-evaluate the legal landscape of Plaintiff's claims, propound new discovery and expend substantial additional resources. All of the foregoing results in severe undue prejudice to VCI.

Furthermore, allowing Plaintiff to add new defendants would be futile and only will serve to render the pleading subject to valid challenge. As set forth below, there are several grounds upon which the proposed new defendants could challenge the proposed Second Amended Complaint ("SAC"), assuming this Court were to permit amendment, which it should not. Plaintiff apparently is aware of these weaknesses given his attempts to "artfully" word the proposed SAC so as to avoid such challenges, including the insupportable allegation that VCI, VCL and the proposed new defendants all are vicariously liable for the events that took place at Boardwalk's dealership on September 2, 2005. Plaintiff attempts to cure his statute of limitations defect by baldly asserting that the new defendants were aware of the potential claims against them. Plaintiff also blithely contends that the new defendants "should have known that but for Plaintiff's mistake concerning the identity of the proper parties, they would have been named as Defendants in the original and

first amended complaints ...." (Motion ¶ 9.) Plaintiff's conclusory statements are insufficient, however, and the defects in the SAC are incurable. The Motions should be denied in their entirety.

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's Initial Complaint (the "Complaint") And The First Amended Complaint (the "FAC")

Plaintiff's Complaint and FAC are largely identical. Plaintiff begins by alleging that on September 2, 2005, he visited Boardwalk's automobile dealership to discuss leasing a Nissan Altima for a payment of $199 per month. (First Amended Complaint ("FAC") ¶ 7.)[1] Plaintiff asserts that, after test driving an Altima at Boardwalk, for which Boardwalk supposedly was prepared to offer him a $199 monthly lease payment, he test drove a Volkswagen Jetta and became interested in leasing a Jetta instead. (Id. ¶ 8.)

Omoregie alleges that the Boardwalk representative with whom he was speaking advised that a similar lease program ($199 monthly payment) may be available on the Jetta through VCI. (Id. ¶ 9.) Omoregie claims that he asked Boardwalk's Assistant Sales Manager (the "ASM") whether a $199 monthly lease payment program was available on Jettas, but that the ASM was uncertain and undertook to check with Boardwalk's General Manager. (Id. ¶¶ 10-11.) Omoregie claims that the ASM returned to inform Omoregie that no such program was available on Jettas and, instead, offered to lease Omoregie the Jetta for $299 per month. (Id. ¶¶ 12-13.) Before agreeing to anything, Boardwalk allowed Omoregie to utilize its computer to perform Internet searches for $199 monthly lease payment programs on Volkswagen Jettas. (Id. ¶¶ 13-14.) Apparently, Omoregie was not able to locate any such programs at that time.

After continued negotiations between Boardwalk representatives and Plaintiff, Plaintiff agreed to lease a new 2005 Volkswagen Jetta sedan (the "Vehicle") for a monthly payment of $219.62. (Id. ¶ 14.) Plaintiff then avers that, on September 4, 2005, he located the $199 monthly lease payment program available from VCI on Volkswagen Jettas on the Internet and contends that he qualified for that program. (Id. ¶ 16.) Plaintiff claims that the "effective annual percentage

---

[1] In the interest of brevity, VCI cites only to the FAC due to the substantial similarities between the Complaint and the FAC.

LA 51045769                                                - 2 -

rate" on his lease was 122% higher than the $199 monthly lease payment program offered to other members of the public. (Id. ¶ 25.)

Based on the foregoing, Plaintiff claims that Boardwalk, VCI and VCL discriminated against him, an African-American individual, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"). (Id. ¶¶ 35-37.) Plaintiff also claims that Boardwalk fraudulently induced him into a more expensive lease, and that VCI and VCL aided and abetted in Boardwalk's fraudulent inducement. (Id. ¶¶ 38-40.) Plaintiff alleges actual damages at $9,691.96. (Id. ¶ 31.) Plaintiff also expressly alleges that he has suffered $4 million in damages as a result of mental anguish, humiliation, and embarrassment suffered as a result of defendants' actions. (Id. ¶ 32.) In addition, Plaintiff seeks statutory penalties in the amount of $10,000 and punitive damages in the amount of $10 million from each of the three named defendants. (See id. ¶¶ 43-44.)

Some notable differences between the Complaint and FAC are as follows:

1. In the FAC, Plaintiff added allegations that Boardwalk and VCI leased Plaintiff the vehicle above the advertised price, that Boardwalk and VCI falsely stated that the vehicle he leased from Boardwalk was not eligible for the promotional lease program and that VCI misrepresented Boardwalk's "authority" to set the final terms of leases. (FAC ¶¶ 19-21.)

2. In the FAC, Plaintiff added his allegations of emotional distress and resutling damages totaling $4 million. (Id. ¶¶ 21, 32.)

**B.    The Proposed SAC**

Plaintiff purports to join VALUF and VALT as defendants in this action. Plaintiff alleges that VALUF is a Delaware limited liability company (SAC ¶ 5) and VALT is a Delaware statutory trust (id. ¶ 6). Plaintiff apparently obtained the identity of these entities through a July 17, 2006 prospectus filed with the Securities Exchange Commission, which Plaintiff served with his discovery requests propounded on VCI on January 14, 2008.

In a major shift, Plaintiff now attempts to focus the action on the issuance of the asset-backed securities of which Plaintiff's lease was one of many leases securitized and sold. (SAC ¶¶ 11-12.) Specifically, Plaintiff purports to allege as follows:

> This action began on or about August 3, 2006, when the VW Affiliates issued $1,500,000,000 in Auto Lease Asset Backed Securities ("ABS") to the public

through J.P. Morgan Securities Inc., ABN AMRO Inc., Citigroup Global Markets Inc., Greenwich Capital Markets, Inc., HSBC Securities (USA) Inc., Morgan Stanley & Co. Inc., Barclays Capital Inc., and Wachovia Capital Markets, LLC.

(SAC ¶ 11.)  These securities, of course, have absolutely nothing to do with this case.

The next major difference from the FAC is that Plaintiff eliminated all of the exhibits related to his lease transaction attached to the FAC -- the lease agreement, the vehicle window display, email communications with Falore Nissan, titling information for the vehicle, spreadsheet on available VW lease programs and Plaintiff's credit scores -- and exchanged it for a flow chart describing the structure of the asset-backed securities from the prospectus.

Another difference is that Plaintiff now attempts to assert his fraud in the inducement claim against all defendants instead of Boardwalk alone.  Plaintiff also seeks to add a claim under California's Consumers Legal Remedies Act, Civil Code Section 1750, et seq. (the "CLRA").  Oddly, he does not allege his fraud in the inducement claims against all defendants; rather, he only asserts the claim against Boardwalk and "vicariously" against VCI.

Lastly, Plaintiff seeks to eliminate all concrete prayers for damages and now simply alleges that he is entitled to actual and punitive damages "according to proof."  (SAC, Prayer for Relief, ¶ i, j.)  And, although still alleged in the proposed SAC (¶ 42), Plaintiff advised via email on April 11, 2008 that he no longer is "asking the court for damages resulting from mental anguish, humiliation or embarrassment." (Declaration of Brian C. Frontino ("Frontino Decl.") ¶ 2, Ex. A.)  Plaintiff, however, refused to re-submit his motion with a corrected proposed SAC.  (See id.)

### III. ARGUMENT

**A.   Standard On Motion For Leave To Amend**

Under Federal Rule of Civil Procedure 15(a), a party may amend his or her complaint once as a matter of right before a responsive pleading has been filed, but thereafter may amend "only by leave of court or by written consent of the adverse party." Serpa v. SBC Telecomms., Inc., 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (quoting Rule 15(a)).  Thus, after the time in which a party may amend as of right, leave to amend "lies 'within the sound discretion of the trial court.'" DCD Programs, LTD. v. Leighton, 833 F.2d 183, 185-86 (9th Cir. 1987) (citing United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)).

While amendments to pleadings generally are granted liberally, this liberality is, nonetheless, "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility." Id. at 186 (citations omitted). Accordingly, courts commonly examine four factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party as well as to the entering party; and (4) futility of the amendment. See id. at 186. Courts may also consider whether a proposed amended complaint would greatly expand the scope of the litigation. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also Hughes Aircraft Co. v. Nat'l Semiconductor Corp., 857 F. Supp. 691, 701 (N.D. Cal. 1994).

As explained in detail below, the proposed SAC fails the foregoing test. Therefore, the Court should deny Plaintiff's Motions.

**B.   Plaintiff's Amendments Are Unduly Delayed.**

"The purpose of amending a pleading 'is to assert matters that were overlooked or were unknown … at the time … [of the] original complaint or answer.'" Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 703 (2d Cir. 1985) (quoting 6 Miller, Wright & Kane, Federal Practice and Procedure § 1473 (1971)). In the Ninth Circuit, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986); see also Mende v. Dun & Bradstreet, Inc., 670 F.2d 129, 131 (9th Cir. 1982) (finding no abuse of discretion where district court denied leave to amend on the grounds of undue delay when, among other things, the plaintiff only sought to add new theories, "not because any new facts came to plaintiff's attention").

Plaintiff argues that his Motion results from recently discovered evidence supposedly revealing that Boardwalk acted as agent of VCI, VCL, VALUF and VALT.[2] Plaintiff also claims that he recently learned that Boardwalk, VCI, VCL, VALUF and VALT were operating as a joint venture. These statements are disingenuous. What Plaintiff omits from his Motion is that he bases

---

[2] In response to Plaintiff's discovery requests, VCI and VCL flatly denied that they are the agents of each other or that Boardwalk is an agent of either VCI or VCL.

1  his "recent" discovery on a July 27, 2006 prospectus filed with the SEC, <u>a public document</u>.

2  Indeed, Plaintiff based a substantial number of his initial discovery requests served on VCI months

3  ago on that prospectus.  Plaintiff has admitted that he is a Harvard undergraduate, a Stanford law

4  graduate and now is first-year associate at Skadden practicing in the area of structured finance and

5  has experience with secured transactions such as these.  He had extraordinary access to publicly-

6  filed SEC documents.  Thus, Plaintiff's conclusory statements that he "recently" learned of the

7  purported facts giving rise to his new theory and claims (Motion ¶¶ 1-6) not only are made in bad

8  faith, but also are insufficient for a finding that the information was "unknown" to Plaintiff at the

9  time he filed his initial Complaint or the FAC.  Indeed, Plaintiff could have asserted these claims in

10 his initial July 2007 Complaint, and most certainly the FAC.

11        Accordingly, Plaintiff always was aware of the facts on which he now bases his

12 amendments, but nevertheless delayed adding these claims until now.  This Court should not

13 countenance Plaintiffs' belated assertion of a newly concocted story with claims that certainly are

14 not "new," even assuming they are viable, which they are not.

15 **C.    Leave To Amend Should Be Denied Because The Amendment Will Expand The Case**

16 **     And Delay Resolution Of The Present Issues.**

17        Courts are well within their discretion to deny a request for leave to amend where

18 amendment would expand the scope of the litigation.  <u>See</u> <u>Morongo Band of Mission Indians</u>, 893

19 F.2d at 1079 ("In light of the radical shift in direction posed by these claims, their tenuous nature,

20 and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in

21 denying leave to amend."); <u>see also</u> <u>Hughes Aircraft Co.</u>, 857 F. Supp. at 701 (stating that it is

22 proper for courts to consider whether the amendment "would 'greatly change the nature of the

23 litigation'") (quoting <u>Morongo</u>, 893 F.2d at 1079).

24        There can be no doubt that the proposed amendments, if accepted, will transform this case.

25 At the moment, the case against Boardwalk and VCI involves three issues surrounding Plaintiff's

26 September 2, 2005 vehicle lease:  (1) whether Boardwalk fraudulently induced Plaintiff to enter

27 into the lease; (2) whether VCI aided and abetted in Boardwalk's fraudulent inducement; and (3)

28 whether Boardwalk and/or VCI discriminated against Plaintiff in his lease.  Now, Plaintiff seeks to

LA 51045769                                - 6 -
CONSOLIDATED OPPOSITION OF DEFENDANTS VW CREDIT LEASING, LTD. AND VW CREDIT, INC. TO
PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND AND ADD DEFENDANTS - Case No. C 07-03884 PJH

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

add an entirely new layer to this lawsuit; namely, that merely by pooling Plaintiff's and other leases <u>long after they were entered into</u>, VALUF and VALT somehow schemed to "aid Boardwalk in the illicit and tortious conduct that surrounded the origination of Plaintiff's lease, and on information and belief, the origination of leases of other members of the public." (SAC ¶¶ 11-12.)[3] Plaintiff also omitted the pertinent documents attached to his prior complaints -- the lease agreement, the window display, his communications with a different dealership and his credit score -- and replaced them with a chart purporting to describe the relationship between VCI, VCL, VALUF and VALT. This somehow is to explain the nature of his claims.

Aside from being incomprehensible, Plaintiff's new compnlaint requires completely different, complicated discovery, which stems from a different set of facts that do not concern Plaintiff's lease whatsoever. There is no basis upon which to allow this action to proceed under these circumstances, and the Motion should be denied.

**D.    Amendment Would Introduce Vagueness And Ambiguity To Plaintiff's Pleading.**

A pleading that states a claim for relief must contain a demand for the relief sought. Fed. R. Civ. P. 8(a)(3). The pleading must also be simple, concise and direct. Fed. R. Civ. P. 8(d)(1). Although Plaintiff's SAC may have been acceptable as an initial pleading by Rule 8 standards, the Court should not permit Plaintiff to modify his pleading in a manner that introduces vagueness and ambiguity by exchanging specific allegations for general, vague allegations.

In the Complaint and FAC, Plaintiff had a specific amount of actual monetary loss for which he prayed; $9,543.95 and $9,691.96, respectively. (Complaint ¶ 33; FAC ¶ 42). Plaintiff already amended his pleading once to specifically pray for $4 million in emotional distress damages for his mental anguish, humiliation, and embarrassment suffered as a result of Boardwalk's and VCI's alleged conduct. (FAC ¶ 32.) In the Complaint and FAC, Plaintiff prayed for $10,000 each in statutory penalties against Boardwalk, VCI and VCL. (Complaint ¶ 33; FAC ¶ 43.) In the Complaint, Plaintiff prayed for $1,000,000 each in punitive damages for their alleged fraud and increased that amount to $10,000,000 in the FAC. (Complaint ¶ 33; FAC ¶ 44.)

---

[3] Tellingly, Plaintiff does not assert, and could not assert, a class action.

In the SAC, Plaintiff has eliminated all of the foregoing allegations as well as the documents pertinent to his claims -- the lease agreement, the window display, his communications with a different dealership and his credit score. Instead, Plaintiff proposes to pray for "damages according to proof" and "punitive damages from each of the Defendants according to proof." (SAC, Prayer for Relief, ¶¶ i, j.) Moreover, only a few days before VCI was scheduled to file this Opposition, Plaintiff claimed that he no longer intends to seek recovery for emotional distress damages. (Frontino Decl. ¶ 2, Ex. A.) Nonetheless, Plaintiff still includes a claim for emotional distress in the proposed SAC currently before the Court.

What constitutes any of the damages Plaintiff may or may not be requesting by the SAC, or how they are calculated, will be wholly unknown and there would be no baseline from which to investigate. If the instant Motion is granted, the amendment would set the lawsuit back significantly because the scope of discovery -- and law and motion -- inevitably will expand as the parties explore the basis of these vague and ambiguous prayers for damages. The Motion should be denied for this additional reason.

### E.   Amendment Would Be Futile.

"[W]here amendment would be futile or the amended complaint subject to dismissal, leave to amend need not be granted." Florer v. Johnson, No. C06-5561 RJB/KLS, 2007 WL 760524, at *1 (W.D. Wash. March 8, 2007) (citing Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991)). The following demonstrate how Plaintiff's proposed amendments indeed are an exercise in futility and will subject the complaint to dismissal on several grounds. For each and all of these reasons, the Motions should be denied.

#### 1.   The Statute Of Limitations Has Run On Plaintiff's ECOA Claims Against VALUF And VALT.

No civil action under ECOA "shall be brought later than two years from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1691e(f). Plaintiff bases his ECOA claim on conduct that occurred at the time he "entered into an agreement to lease a 2005 new Jetta … from defendant Boardwalk Auto Center, Inc. … who immediately thereafter assigned the lease to defendants VW Credit Leasing, Ltd. and VW Credit, Inc." on September 2, 2005. (Complaint ¶ 5;

LA 51045769                                                            - 8 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  FAC ¶ 5; SAC ¶ 13.)  Accordingly, on the face of the various complaints, any alleged ECOA

2  violation necessarily could not have occurred after September 2, 2005.  Although the instant action

3  initially was filed on July 30, 2007, VALUF and VALT were not named defendants at that time.

4  Given that VALUF and VALT still have not been served in this action, any purported ECOA claim

5  against them expired seven months ago on September 2, 2007.

6        Plaintiff's attempt to relate the SAC back to the Complaint and/or the FAC fails.  In order to

7  do so, Plaintiff must meet the requirements of Rule 15(c).  Rule 15(c) first requires that the same

8  conduct, transaction or occurrence be alleged as to the new defendant(s).  Fed. R. Civ. P.

9  15(c)(1)(C).  Next, Plaintiff must show that, within the time specified in Rule 4(m) -- 120 days

10  after the initial complaint is filed -- the party to be added received notice such that it will not be

11  prejudiced in defending on the merits, and knew or should have known that the action would have

12  been brought against it, but for a mistake concerning the proper party's identity.  Id.; Louisiana-

13  Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993) (relation back applies only in the

14  instance of a mistake as to a defendant's identity, not liability).  Plaintiff meets none of Rule

15  15(c)'s requirements.

16        As discussed above, Plaintiff seeks to completely re-frame this action from a discrimination

17  and fraud claim in connection with his September 2, 2005 lease agreement with Boardwalk (an

18  auto dealership) to the issuance of asset-backed securities in August 2006 by two completely

19  unrelated entities.  (Compare Complaint ¶¶ 4-28 and FAC ¶¶ 4-34 with SAC ¶¶ 11-12.)  These

20  divergent allegations plainly demonstrate that the SAC is not based upon the same conduct,

21  transaction or occurrence as to VALUF and VALT.  VALUF and VALT were not even arguably

22  on constructive notice of Plaintiff's claims because Plaintiff never alleged any conduct past VCI's

23  review of Plaintiff's lease application or VCL's status as lienholder of the vehicle.  VCI and VCL

24  themselves were not party to face-to-face negotiations between Boardwalk and Plaintiff.  For these

25  reasons, VALUF and VALT were not on notice, nor should have known, by January 27, 2008, i.e.,

26  120 days after Plaintiff filed his Complaint, that any potential claims could be asserted against them

27  but for Plaintiff's mistake in their identity.

28  / / /

Given that Plaintiff referred to and attached the July 17, 2006 prospectus filed with the SEC to his January 2008 discovery requests propounded on VCI, and his experience as an attorney in the area of structured finance at Skadden, Plaintiff obviously chose deliberately not to name or attempt to join VALUF and VALT.  Plaintiff cannot credibly argue that he was "unaware" of VALUF's and/or VALT's potential liability, which precludes relation back and confirms that his ECOA claim is time-barred as to VALUF and VALT.

**2. On The Face Of Plaintiff's Proposed Allegations, VALUF And VALT Could Not Have Been Involved With The Facts Giving Rise To Any Purported ECOA Violation.**

ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction -- (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter."  15 U.S.C. § 1691(a).[4]  A "credit transaction" under ECOA includes "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit," and expressly includes the "credit terms."  12 C.F.R. § 202.2(m) (emphasis added).  An "applicant" is "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit."  12 C.F.R. § 202.2(e).

ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  15 U.S.C. § 1691a(e); see also 12 C.F.R. Pt. 202, Supp. I, § 202.1, 1(a), cmt. 1.  Although ECOA considers assignees to be "creditors" under certain circumstances, Regulation B also expressly exempts assignee creditors from liability unless the assignee "knew or had reasonable

---

[4] Regulation B similarly provides that "[a] creditor shall not discriminate against an applicant on a prohibited basis regarding any aspect of a credit transaction."  12 C.F.R. § 202.4(a) (emphasis added).

notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction." See 12 C.F.R. § 202.2(l).

Plaintiff attempts to allege that VALUF participated in the credit decision involved in the this action, i.e., Plaintiff's lease. (SAC ¶ 37.) Plaintiff further purports to allege that the "VW Affiliates were willing to aid Boardwalk in the illicit and tortious conduct that surrounded the origination of Plaintiff's lease." (Id. ¶ 12.) These allegations, however, are belied by other allegations within the proposed SAC. Plaintiff admits that he entered into his lease agreement on September 2, 2005, but that VALUF and VALT did not have any alleged involvement until August 2006. (Complaint ¶ 5; FAC ¶ 5; SAC ¶¶ 11, 13.) Plaintiff, in fact, concedes that VALUF and VALT had no involvement: Plaintiff's "application for the financing of the lease was processed and approved by VCI. … VCI subsequently caused VCL to finance the lease transaction. (Id. ¶ 17.) Plaintiff also alleges that it was VCI and VCL, not VALUF and/or VALT, that offered the "incentive offer" that Plaintiff believes he did not obtain due to discrimination. (SAC ¶ 14.) These facts are irreconcilable and, therefore, amendment is futile.

### 3. Plaintiff's Fraudulent Deceit And Aiding And Abetting Claims Against VALUF and VALT Similarly Fail.

Plaintiff also now attempts to assert a fraudulent deceit (inducement) claim and an aiding and abetting fraudulent deceit claim against VALUF and VALT. As Plaintiff previously conceded by way of the Complaint and the FAC, fraudulent inducement only may be alleged against Boardwalk, who alone handled the negotiations of Plaintiff's lease. (See FAC ¶ 38.) Plaintiff now attempts to bootstrap VCI, VCL, VALUF and VALT to his fraudulent inducement claim by alleging "vicarious" liability.

With respect to his claim for aiding and abetting fraud, Plaintiff must plead and prove: (a) that VALUF and VALT had actual knowledge of Boardwalk's acts that constitute the alleged fraud; (b) that VALUF and VALT had knowledge that their own actions would assist Boardwalk in the commission of the alleged fraud; and (c) that VALUF and VALT did in fact provide substantial assistance to Boardwalk in the commission of the alleged fraud. See In re First Alliance Mortgage Co., 471 F.3d 977, 992-93 (9th Cir. 2006).

Plaintiff's claims are frivolous.  <u>First</u>, as described above, Plaintiff admits that he entered into his lease on September 2, 2005 and, as pleaded, VALUF and VALT did not come into play for purposes of this action until August 2006.  <u>Second</u>, Plaintiff has not pleaded any relationship between Boardwalk, with whom Plaintiff dealt with directly, and VALUF and VALT.  Plaintiff is well aware that there is no relationship between Boardwalk and VALUF and VALT.  Based on the foregoing, it is inconceivable to allege that VALUF and VALT committed fraud in the inducement in connection with the origination of Plaintiff's lease, or that they had actual knowledge of any overt fraud.  Furthermore, these allegations wholly contradict any notion that actions of VALUF and VALT assisted Boardwalk in any fraud.

### 4. This Court Has No Jurisdiction Over VALUF Or VALT.

It is well established that the plaintiff bears the burden of establishing that personal jurisdiction over <u>each defendant</u> is proper.  <u>Calder v. Jones</u>, 465 U.S. 783, 787-89, 104 S. Ct. 1482 (1984); <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986).  The law of the state in which the district court is located determines whether personal jurisdiction exists.  <u>See</u> Fed. R. Civ. P. 4(k)(1)(A) (Service of summons in a federal action establishes personal jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.").  Thus, the Court first must ask whether an applicable state rule or statute confers personal jurisdiction over the defendant.  <u>Data Disc, Inc. v. Systems Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1286 (9th Cir. 1977) (citation omitted).  <u>Second</u>, the Court must determine whether assertion of such jurisdiction would offend constitutional principles.  <u>Id.</u>

Under California's long-arm statute, a court may only exercise jurisdiction over non-resident defendants when such an exercise is consistent with the California or United States Constitution.  Code Civ. Proc. § 410.10.  Due process considerations preclude a court from asserting jurisdiction over a non-resident defendant unless the defendant has certain minimum contacts with the forum state.  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S. Ct. 154 (1945); <u>Cornelison v. Chaney</u>, 16 Cal. 3d 143, 147 (1976).  The overriding constitutional principle is that maintenance of an action in the forum must not offend the "traditional conception of fair play and substantial justice."  <u>International Shoe Co.</u>, 326 U.S. at 320.  The minimum

1  contacts requirement ensures that a defendant should be able to reasonably anticipate being haled
2  into court in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100
3  S. Ct. 559 (1980).
4    Depending on the factual allegations, a court may exercise either general or specific
5  jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia S.A. v. Hall, 466
6  U.S. 408, 414 n.8-9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). General jurisdiction may apply
7  where the defendant's contacts with the forum state are not related to the causes of action alleged in
8  the complaint. Data Disc, 557 F.2d at 1287. For general jurisdiction to exist, however, it must be
9  shown that "a corporation's activities in the forum are so 'continuous and systematic' that the
10 corporation may in fact be said already to be 'present' there . . . ." Wells Fargo & Co. v. Wells
11 Fargo Express Co., 556 F.2d 406, 413 (9th Cir. 1977). Specific jurisdiction may be exercised only
12 where an alleged cause of action arises out of the defendant's forum-related activities. Haisten v.
13 Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986).
14   The SAC is devoid of any allegations that VALUF and/or VALT have the required contact
15 with California in order for jurisdiction to be proper, much less any facts showing the involvement
16 of VALUF and/or VALT in any of the activities set forth in the SAC or any contact with the State
17 of California. Indeed, Plaintiff himself alleges that VALUF is a Delaware limited liability
18 company and that VALT is a Delaware statutory trust. Thus, there is no showing whatsoever that
19 this Court properly can exercise personal jurisdiction over VALUF and/or VALT, which is
20 required. Because Plaintiff has failed to do so, amendment would be futile, and the Court should
21 deny the instant Motions.

22 **F.  Plaintiff's Purported Amendments Plainly Are In Bad Faith And Defendants Will Be**
23 **Severely Prejudiced If Amendment Is Permitted.**

24   "Bad faith in filing a motion for leave to amend exists when the addition of new legal
25 theories are baseless and presented for the purpose of prolonging the litigation." Edwards
26 Lifesciences LLC v. Cook Inc., No. C 03-03817 JSW, 2008 WL 913328, at *4 (N.D. Cal. Apr. 2,
27 2008) (citing Griggs v. Pace American Group, Inc., 170 F.3d 877, 881 (9th Cir. 1999)). Plaintiff's
28 actions may only be viewed as an attempt to intimidate and harass VCI in bad faith by adding what

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Plaintiff styles as "VW Affiliates." It would be highly prejudicial to all defendants, but particularly VALUF and VALT, to grant Plaintiff's Motions, which by far is the most important and most common reason for denying leave to amend. Eminence v. Aspeon, 316 F.3d 1048, 1052 (9th Cir. 2002) ("[p]rejudice is the touchstone of the inquiry under rule 15(a)"). Indeed, some courts presume prejudice where a motion to amend is brought long after the initial pleading and purports to add unnamed defendants. Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 43 F.3d 1054, 1069 (6th Cir. 1995) (amendment to add party over one year after complaint filed denied as too prejudicial to new party).

As explained in detail above, Plaintiff was well aware of his "new" claims and the "new" parties long ago. More importantly, the factual allegations are inconsistent and cannot be reconciled to demonstrate a connection between VALUF and VALT and Plaintiff, much less any "vicarious liability." The statute of limitations has run on any ECOA claim against these entities in any event. Furthermore, Plaintiff should not be permitted to change the scope of this litigation and bring in unrelated parties and transactions in an effort to intimidate. Granting the instant Motion would impose severe undue prejudice on all defendants and would only endorse Plaintiff's bad faith.

## IV.  CONCLUSION

For the reasons explained above, the Court should deny the Motion.

Dated: April 16, 2008

STROOCK & STROOCK & LAVAN LLP
LISA M. SIMONETTI
BRIAN C. FRONTINO

By: _____/s/ Brian C. Frontino_____
        Brian C. Frontino

Attorneys for Defendants
   VW CREDIT LEASING, LTD. and VW
   CREDIT, INC., a/k/a VOLKSWAGEN
   CREDIT, INC.